U.S. COURT OF APPEALS
**RECEIVED**
**Jul 16, 2025**
FIFTH CIRCUIT

**No. _____**

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

### IN RE WEBSEED, INC. and BRIGHTEON MEDIA, INC.

---

Original Proceeding from the United States District Court for the
Western District of Texas, Austin Division
No. 1:24-CV-576-RP

---

## PETITION FOR WRIT OF MANDAMUS

---

**GREYBER LAW, PLLC**
Jeffrey L. Greyber, Esq.
Texas Bar No. 24103030
5th Cir. Court Admitted
Lead Counsel
jgreyber@greyberlaw.com
9170 Glades Rd.
Boca Raton, FL 33434
(561) 702-7673 (o)
(833) 809-0137 (f)

**POLI, MOON & ZANE, PLLC**
Jeffrey G. Zane, Esq.
Texas Bar No. 24095197
Local Co-Counsel
jzane@pmzlaw.com
807 S. Rock St., Ste. 101
Georgetown, TX  78626
(512) 508-4693 (o)
(602) 857-7333 (f)

*Counsel for Petitioners,*
*Webseed, Inc. and Brigteon Media, Inc*

i

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to 5th Cir. R. 28.2.1, undersigned counsel of record certifies that the following listed (non-governmental) persons or entities have an interest in the outcome of this case. These representations are made so that the Judges of this Court may evaluate possible disqualification or recusal. Given the large amount of Respondents/Defendants, we hereby provide a "generic description" of a "group or persons or firms." *See id.*

- Webseed, Inc. ("Webseed") and Brighteon Media, Inc. ("Brighteon") Petitioners. These Petitioners oppose the transfer of this matter to the Northern District of California Court, which such transfer unfolded in such a swift fashion that Petitioners/Plaintiffs had absolutely no time for a stay of the W.D. Tex. transfer order so as to Petition this Court before proceedings were shipped off to California; *i.e.*, these Petitioners object to the District Court's transfer decision-making and procedures and hereby advance this Petition.

  - At all material times, Webseed and Brighteon were companies incorporated in Wyoming with its principal place of business / nerve center / headquarters in Bastrop County, Texas.

  - Petitioners' / Plaintiffs' counsel of record are listed on the first page of this Petition, with Mr. Greyber serving as lead counsel.

- Social Media / Platform / Big Tech Respondents: these Respondents include Meta Platforms, Inc. (f/k/a/ Facebook, Inc.) ("Meta"), Google, LLC ("Google"), and X Corp. (f/k/a/ Twitter, Inc.) ("X"). These are the Defendants responsible for effectuating transfer to the Northern District of California Court, which such transfer is the subject of this Petition.

  - At all material times, Meta was a company incorporated in Delaware, with its principal place of business / nerve center / headquarters in San Mateo County, California.

    - Meta's Counsel of Record Includes: **(a)** Jordan L. Greene, Kirkland & Ellis LLP, 1301 Pennsylvania Ave NW Washington, DC 20004, 202-389-3067, jordan.greene@kirkland.com; **(b)** Kasdin M. Mitchell, Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, Washington, DC 20004, 202-389-5165, kasdin.mitchell@kirkland.com; **(c)** Zachary C. Ewing, Kirkland & Ellis LLP, 401 Congress Avenue, Austin, TX, 78701, 512-678-9178, zack.ewing@kirkland.com.

  - At all material times, Google was / is a Delaware limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Santa Clara County, California. Google's members / authorized persons consist of Sundar Pichai (CEO), Ruth Porat (CFO),

iii

Kent Walker (Secretary), Kenneth Yi (Assistant Secretary), and XXVI Holdings, Inc. (Authorized Member), all of whom, in corporate filings, set forth Mountain View, California (Santa Clara County) with respect to domicile / residence.

- Google's Counsel of Record Includes: **(a)** James Bor-Zale, Wilmer Cutler Pickering Hale and Dorr, LLP, 60 State Street, Boston, MA 02109, 617-526-6079, james.bor-zale@wilmerhale.com; **(b)** Joshua H. Lerner, Wilmer Cutler Pickering Hale and Dorr LLP, 50 California Street, Suite 3600, San Francisco, CA 94111, 628-235-1124, joshua.lerner@wilmerhale.com; **(c)** Sonal Naresh Mehta, Wilmer Cutler Pickering Hale and Dorr, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306, 650-600-5051, sonal.mehta@wilmerhale.com. **(d)** Paige Arnette Amstutz, Scott, Douglass & McConnico, LLP, 303 Colorado Street, Suite 2400, Austin, TX 78701, 512-495-6300, 512-495-6399 (fax), pamstutz@scottdoug.com.

o At all material times, X was a company incorporated in Delaware, with its principal place of business / nerve center / headquarters in San Francisco County, California. At other material times, X was / is a

company incorporated in Nevada, with its principal place of business / nerve center / headquarters in San Francisco County, California.

- X's Counsel of Record Includes: **(a)** Kenneth Michael Trujillo-Jamison (lead attorney), Willenken LLP, 707 Wilshire Blvd, Suite 4100, Los Angeles, CA 90017, 213-955-8031, 213-955-9250 (fax), ktrujillo-jamison@willeken.com; **(b)** Michael R. Abrams, Stone Hilton, PLLC, 600 Congress Ave., Suite 2350, Austin, TX 78701, 737-465-3897, michael@stonehilton.com.

- NGO "Respondents:" these "Respondents" include NewsGuard Technologies, Inc. ("NewsGuard"), Institute for Strategic Dialogue ("ISD"), and Global Disinformation Index ("GDI"). These Defendants did not take a position on the underlying transfer motion practice that has led to this Petition, hence "Respondents" in quotation marks (*i.e.*, the NGOs do not have a proverbial dog in the transfer fight). Indeed, ISD and GDI have not even appeared in the case notwithstanding overseas service having occurred.

  - At all material times, NewsGuard was / is a company incorporated in Delaware, with its principal place of business / nerve center / headquarters in Manhattan County, New York.

    - NewsGuard's Counsel of Record Includes: Laura Lee Prather, Catherine Lewis Robb, and Michael Joseph Lambert, Haynes

and Boone, LLP, 98 San Jacinto Boulevard, Suite 1500, Austin,

TX    78701,    512-867-8400,    512-867-8470    (fax),

laura.prather@haynesboone.com,

catherine.robb@haynesboone.com,

michael.lambert@haynesboone.com.

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

I.      Statement of Jurisdiction …………………………………...      1

II.     Statement of the Issues ……………………………….......      1-2

III.    Statement of the Case / Brief Background ……………………      2-10

IV.     Argument / Reasons To Grant The Writ ………………………      10-33

        A. Legal Standard(s) …………………………………………..      10-11

        B. A Writ of Mandamus is the Only Means Petitioners Have
           to Prevent the Irreparable Harm Threatened by Transfer
           to the N.D. Cal. Court ………………………………………      11-14

           1.  Premature Transfer Violated Fifth Circuit Law ………...      12

           2.  No Meaningful *De Novo* Review Conducted …………...      13

           3.  State Law Conflict Was Ignored Entirely ………………      13

           4.  Misapplied The Law To The Wrong Claims ……………      13

           5.  Jurisdictionally Improper For Many Defendants ………..      13

           6.  X Engaged In Reverse Forum Shopping ………………...      13

7.  California Courts Are Structurally Biased ……………….    14

C. Petitioners' Right to Mandamus is Clear and Indisputable,
as the District Court Abused Its Discretion …………………    14-29

1.  The District Court Did Not Stay Its Transfer Order Before
Transfer, In Direct Contravention Of Fifth Circuit
Precedent …………………………………………………….    15

2.  The District Court Did Not Engage In A Legitimate *De
Novo* Review, In Contravention Of Federal Rules And
Fifth Circuit Precedent …………………………………….    15-17

3.  The W.D. Tex. Court Ignored Conflicts In State Law –
The Transfer Order Nullifies Texas' Unique Public Policy
Protections …………………………………………………    17-18

4.  The District Court Clearly Relied On Erroneous Conclusions
Of Law And Misapplied The Law To The Facts …………..    18-20

5.  The Transfer Order Disregards Non-Contracting Defendants
And The Risk Of Improper Fracturing ………………………    20-23

6.  X's Forum Manipulation Undermines Its Position Entirely
And Warrants Mandamus Relief ……………………………    23-25

7.  The District Court Ignored Well-Documented Structural Bias
And Systemic Misapplication Of Law In The Northern
District Of California ………………………………………    25-29

D. Issuance of the Writ is Appropriate Here ………………………..    29-33

V.    Conclusion ……………………………………………..................    33

VI.    Certificate of Compliance ……………………………………...........    34

VII.    Certificate of Service ……………………………………...............    34-35

# TABLE OF AUTHORITIES / CITATIONS

**PAGE**

***Case Law***

*A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024)……………........... *passim*

*Anderson v. TikTok, Inc.*, No. 22-3061, 2024 WL 3948248 (3d Cir. Aug. 27, 2024) ………………………………………………………… 7, 27

*Henderson v. The Source for Public Data, L.P., et al.*, 53 F.4th 110 (4th Cir. 2022) ………………………………………………………… 7, 27

*Cancer Step Outside the Box, LLC, et al. v. Dept. of State, et al.*, No. 3:24-cv-01465 (M.D. Tenn., Nashville Div.) ……………………. *passim*

*Fyk v. Facebook, Inc.*, No. 18-cv-05159-HSG (N.D. Cal.)……………… 8, 26-27, n.4

*In re Chamber of Commerce of USA*, 105 F.4th 297 (5th Cir. 2024)……. 1, 11, 15, 30, 31-32

*In re Landry*, 83 F.4th 300 (5th Cir. 2023)……………………………….. 10

*In re Red Barn Motors, Inc.,* 794 F.3d 481 (5th Cir. 2015)……………… 32

*In re U.S.*, 397 F.3d 274 (5th Cir. 2005)………………………………….. 29, 31

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008)……….. 10-11, 14

*Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023)…………………………. 5, 8-9

*U.S. v. Denson*, 603 F.2d 1143 (5th Cir. 1979) (en banc)…………………. 17, n.3, 30

***Codes***

28 U.S.C. §636 ………………………………………………………….. 16

28 U.S.C. §1331 …………………………………………………… 1

28 U.S.C. §1332 …………………………………………….. 1

28 U.S.C. §1361…………………………………………………… 1

28 U.S.C. §1391 …………………………………………….. 1

28 U.S.C. §1404 …………………………………………………… 1-2, 10, 14, 23, 30

28 U.S.C. §1651 …………………………………………….... 1

47 U.S.C. §230 ……………………………………………… *passim*

### Rules

Fed. R. App. P. 21 …………………………………………………… 1, 34-35

Fed. R. App. P. 25 …………………………………………………… 34

Fed. R. App. P. 32 …………………………………………………… 34

Fed. R. Civ. P. 72 …………………………………………………… 13, 15-16

5th Cir. R. 21 …………………………………………………… 1

5th Cir. R. 25.2.5 …………………………………………………… 34

5th Cir. R. 32 …………………………………………………… 34

### Guidelines

Fifth Circuit's Practitioners' Guide……………………………….. 33

### Orders

Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024)……………………………..    n.5

**Statutes**

Texas HB 20 ……………………………………………………………. *Passim*

## I.     STATEMENT OF JURISDICTION

This Petition relates to a transfer order per 28 U.S.C. §1404. The W.D. Tex. Court, Austin Division (Judge Pitman, and Magistrate Judge Howell), exercised jurisdiction in this case under 28 U.S.C. §1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of fees, costs, interest, or otherwise. Moreover, because the Constitution (First Amendment) is implicated by this case, the District Court also possessed federal question jurisdiction pursuant to 28 U.S.C. §1331. Venue was/is proper in the W.D. Tex. Court (Austin Division) pursuant to 28 U.S.C. §1391(b), since this judicial district is where Plaintiffs maintain their principal place of business and since various events or omissions which give rise to and/or underlie this suit occurred within this judicial district. And the Austin Division of this Court had personal jurisdiction due to Defendants' minimum contacts in this forum.

This Court has jurisdiction pursuant to 28 U.S.C. §1361, FRAP 21, 5th Cir. R. 21, and principles rooted in 28 U.S.C. §1651. This Court's review of the subject transfer order is under a clear abuse of discretion standard. *See, e.g.*, *In re Chamber of Commerce of USA*, 105 F.4th 297 (5th Cir. 2024).

## II.     STATEMENT OF THE ISSUES

1.     Whether the W.D. Tex. Court erred and/or abused its discretion by immediately (73mins) transferring Texas-based Petitioners' case to the N.D. Cal.

Court under 28 U.S.C. §1404 without affording Petitioners any opportunity to oppose the transfer in this Court pursuant to this this Court's myriad exhortations regarding same.

2.      Whether the W.D. Tex. Court erred and/or abused its discretion by failing to engage in a legitimate *de novo* review.

3.      Whether the W.D. Tex. Court erred and/or abused its discretion by ignoring conflicts between germane Texas and California law and/or ignoring California's well-entrenched Big Tech bias.

4.      Whether the W.D. Tex. Court erred and/or abused its discretion by relying on erroneous factual findings.

5.      Whether the W.D. Tex. Court erred and/or abused its discretion by arriving at erroneous conclusions of law and/or a misapplication of the law to the facts, namely vis-à-vis the District Court's ignoring this Court's *Salesforce* precedent.

6.      Whether this Court should issue a writ of mandamus directing the W.D. Tex. Court to request return of the case from the N.D. Cal. Court.

## III.    STATEMENT OF THE CASE / BRIEF BACKGROUND

This action commenced on May 27, 2024. [D.E. 1]. Plaintiffs filed a minor amendment on June 21, 2024 [D.E. 4], to correct a foreign NGO's name for service. All Defendants were served. [D.E. 3, 6]. On September 28, 2024, Meta, Google, and

X ("Platform Defendants") moved to transfer the case to the N.D. Cal. Court. [D.E. 37–39]. Plaintiffs opposed [D.E. 49], replies followed [D.E. 50–52], and on February 24, 2025, the Magistrate Judge issued a Report and Recommendation ("R&R") favoring transfer. [D.E. 56]. Plaintiffs timely objected. [D.E. 58]. On April 2, 2025, in a two-page transfer Order, the District Judge adopted the R&R, without any analysis or real thought (sans an actual *de novo* review). [D.E. 59]. *Just 73mins later*, the case was docketed in the N.D. Cal. Court [D.E. 60]. After conferral, Plaintiffs moved the transferee Court for an emergency stay of proceedings to pursue this mandamus here. [D.E. 75]. The N.D. Cal. Court granted the stay on April 17, 2025, allowing Plaintiffs until July 17, 2025, to file this Petition. [D.E. 78].[1]

We now turn to the true nature of this case, which has nothing to do with a typical contractual terms-of-service ("TOS") dispute or any routine application of interactive computer services, and involves myriad parties (Government Defendants and NGO Defendants who are not privy to the TOS anyway). Rather, this civil action challenges a coordinated censorship regime that implicates core constitutional rights, including free speech and due process, through unlawful Government, NGO, and Platform coordination (*i.e.*, joint participation at best, conspiracy at worst).

---

[1] Germane transfer-related filings from W.D. Tex. and N.D. Cal. Courts are attached hereto as composite **Exhibit A** (in reverse chronological order) and incorporated herein by reference.

*This case confronts one of the most insidious and well-documented assaults on free speech in American history.* At its core is a deliberate scheme in which the Government, acting through agencies such as the DOS, the GEC (now closed because of its coordinate censorship actions),[2] the DOD, and the DHS, coordinated with private actors to label dissenting speech, like that of Plaintiffs, as "disinformation" and overtly and covertly erase it from the digital public square. The Platform Defendants were not acting independently (*i.e.,* privately) pursuant to any TOS, but in direct coordination with (and in some cases, under pressure and incentive/protection from) Government officials and proxy NGOs.

*This Government-led censorship regime (the Censorship Industrial Complex) is not hypothetical.* Government-funded entities (such as NGOs NewsGuard, ISD, and GDI) created blacklists and assigned "risk" scores to news outlets and individuals like Plaintiffs, not based on factual inaccuracies, but on viewpoint. These biased scores were then funneled into Platform enforcement systems and used to fraudulently justify algorithmic throttling, defunding, demonetization, and removal, each a form of first-party conduct (*i.e.,* the platform's own development of content and editorial decisions), not the neutral provision of "interactive computer services" contemplated by platform "terms of [interactive computer] service." The result was

---

[2] https://www.newsmax.com/newsfront/gec-gdi-newsguard/2025/04/16/id/1207185/

the systematic silencing of disfavored and competitive speech, including Plaintiffs' commentary on COVID-19, public health policy, and politically sensitive issues of national concern.

Plaintiffs were directly harmed by this regime, specifically identified in the evidentiary record released in *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023). Plaintiffs were deliberately blacklisted, demonetized, and erased from the digital public, not for violating any private platform terms (further confirming this is not a contractual dispute), but because their speech and media operations advanced counter-narratives the Government sought to suppress. Their reputations were attacked, their audiences removed, and their businesses destroyed, without due process or lawful justification.

Critically, this campaign was enabled by the judicial misapplication of 47 U.S.C. §230(c)(1) (the "CDA"), *particularly by courts in the N.D. Cal Court and the Ninth Circuit Court*. Rather than applying §230 as a limited civil liability shield for third-party content (as the statute plainly provides), these courts have distorted it into an all-purpose "immunity" for any Platform conduct, including censorship undertaken at the Government's behest. As this Court correctly observed, liability cannot be dismissed merely due to an action implicating some sort of Platform misconduct: "the fact that third-party speech is involved somewhere in the chain of causation that led to a plaintiff's injuries does not mean that a plaintiff's claims

necessarily treat a defendant as a publisher or speaker of that third-party speech." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 795 (5th Cir. 2024). Yet courts in California have adopted precisely that flawed reasoning, extending immunity even when platforms are acting as agents of the state.

This same reflexive logic infects transfer determinations as well. Big Tech-related cases are often funneled to California courts merely because they relate to Big Tech, without the careful, *de novo* review required under governing transfer law (as wrongly occurred here). This Court in *Salesforce* continued:

> We have expounded an analytical framework grounded in section 230's text and this court's precedent, which is also consistent with the precedent of our sister circuits. In line with those authorities, we ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'

*Id.* at 796-797 (internal citation omitted).

The exact same *Salesforce* analysis necessarily applies here. The duties the Platform Defendants are alleged to have violated in this action have nothing to do with the Platforms' status under TOS having to do with the ordinary provision of interactive computer services. Yes, the Platforms de-platformed the Plaintiffs somewhere remotely down the causation line, but such de-platforming had nothing to do with terms set forth within the four corners of the TOS – the de-platforming was done at the Government's behest, bolstered by fabricated NGO data at the Government's behest, all as part of the Censorship Industrial Complex. Put

differently, nowhere does the Amended Complaint seek to hold the Platform Defendants liable for legal/contractual duties owed under the TOS – this is not a mundane publishing/speaking contract-type dispute, this is a complex Censorship Industrial Complex dispute. For the lower Courts to have determined that this action was subject to the Platforms' TOS, the lower Courts necessarily rewrote the nature of this action and completely disregarded the proper logic/analysis set forth by this Court in *Salesforce.*

The Ninth Circuit's expansive "immunity" theory directly contradicts §230's text, congressional intent, and the constitutional guarantee of due process. It is now squarely at odds with decisions from the Third, Fourth, and Fifth Circuits. *See, e.g., Anderson v. TikTok, Inc.*, No. 22-3061, 2024 WL 3948248 (3d Cir. Aug. 27, 2024); *Henderson v. The Source for Public Data, L.P., et al.*, 53 F.4th 110 (4th Cir. 2022); *A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024).

The Ninth Circuit now stands as the outlier court *perpetuating the internet censorship crisis* through its expansive, extratextual application of §230. That deviation is not merely the result of legal error; rather, upon information and belief, certain California judges appear to be activist jurists who are either participating in or enabling the Censorship Industrial Complex. Plaintiffs offered to expand on this issue based on newly discovered evidence obtained after filing this suit. The District

Court, however, denied Plaintiffs' amendment before the transfer that unfolded in 73mins.

Plaintiffs assert that Circuit split is no accident. The Ninth Circuit's dominance over Big Tech litigation has created structural distortion – extratextual immunity has become the default rule, and constitutional injuries are routinely extinguished at the pleading stage. This entrenched dynamic has made redress all but impossible for litigants like Plaintiffs, who are funneled into a jurisdiction effectively captured by the very industry they seek to hold accountable.

SCOTUS' repeated refusal to resolve this ongoing split (despite three certiorari petitions in *Fyk v. Facebook*) has left Americans, including Texans, without a reliable or consistent legal standard. Texans are not protected by California law, nor should their constitutional claims be extinguished by foreign courts that openly refuse to adjudicate them properly. The Fifth Circuit's interest in preserving both its precedent and the constitutional rights of its citizens is squarely implicated here.

This case expounds on *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023). In that case, this Court found that Government actors had "coerced or significantly encouraged" social media companies to suppress protected speech. *Id.* at 386–87. Plaintiffs were among the victims harmed by that unlawful behavior, and their

claims trace directly to the same censorship infrastructure the Fifth Circuit has already condemned.

At stake is not merely the future of digital speech, it is the First Amendment itself. If the Government is permitted to conscript private companies into suppressing lawful speech, and then those companies are immunized from suit under a distorted version of §230 in captive courts, the Constitution becomes irrelevant. Worse, if those same cases are funneled into the one jurisdiction that fundamentally *engineered* the distortion, then transfer becomes just another tool of procedural censorship; *i.e.*, a backdoor, meritless dismissal.

This Court must intervene. Plaintiffs were silenced by a federally orchestrated censorship apparatus, one that has never been meaningfully halted or fully adjudicated (with all parties present … of note, the *Missouri v. Biden* case lacked the Platform Defendants) on the merits. This case serves as a superior vehicle to expose and remedy that unconstitutional regime. Leaving this case under the control of the Ninth Circuit all but ensures Plaintiffs' demise.

Plaintiffs deserve a just forum in which the Constitution is upheld, judicial neutrality is not just presumed but is actual, and the record is not closed before discovery even begins. The stakes could not be higher – the legitimacy of the First Amendment, the integrity of the federal judiciary, the upholding (rather than the circumvention of) Texas Law (*e.g.*, HB 20), the right of Texans to speak freely in

the digital age, the condemnation of reverse forum shopping, and *et cetera* hang in the balance.

## IV.    ARGUMENT / REASONS TO GRANT THE WRIT

### A.    *Legal Standard(s)*

This Court "expressly 'recognize[s] the availability of mandamus as a limited means to test the district court's discretion in issuing transfer orders. There can be no doubt therefore that mandamus is an appropriate means of testing a district court's § 1404(a) ruling." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (internal citation omitted).

> [T]hree conditions must be satisfied before mandamus may be issued: (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires, which is a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process, (2) the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable, and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*In re Landry*, 83 F.4th 300, 304-305 (5th Cir. 2023) (internal citations omitted); *see also, e.g., In re Volkswagen of America, Inc.* (same, and holding that the district court's transfer decision constituted a clear abuse of discretion because it misapplied the relevant legal standards and ignored binding Fifth Circuit precedent, emphasizing that mandamus is appropriate to confine a lower court to a lawful

exercise of its jurisdiction and to correct extraordinary errors that cannot be remedied

through the regular appeals process).

> A district court abuses its discretion if it: (1) relies on clearly erroneous
> factual findings; (2) relies on erroneous conclusions of law; or (3)
> misapplies the law to the facts. On mandamus review, we review for
> these types of errors, but we only will grant mandamus relief when such
> errors produce a patently erroneous result.

*In re Volkswagen of America, Inc.* at 310.

> The Fifth Circuit Court urges district courts to:

> prudently adopt a practice 'especially deserving of commendation':
> staying their venue-transfer orders for a short time so that opposing
> parties may have time to seek review, if warranted, on a less
> hurried/harried basis. Doing so here would have avoided-not once but
> twice-the unfortunate circumstance of considering a mandamus
> proceeding on a highly expedited timeline. Controlling venue and
> transfer rules preclude sending this case to Washington, D.C. With
> surpassing respect for the conscientious district court judge, we
> conclude on these facts and this record that mandamus relief is
> appropriate.

*In re Chamber of Commerce of USA*, 105 F.4th 297, 312 (5th Cir. 2024).

### B.     *A Writ Of Mandamus Is The Only Means Petitioners Have To Prevent The Irreparable Harm Threatened By Transfer To The N.D. Cal. Court*

This Petition is advanced to prevent the irreparable harm caused by the

transfer of this case to a forum that lacks both jurisdictional legitimacy and

constitutional neutrality (the N.D. Cal. Court). On April 2, 2025, the W.D. Tex.

Court issued a cursory two-page order transferring the case to N.D. Cal.:

> Because Plaintiffs timely objected to the report and recommendation,
> the Court reviews the report and recommendation *de novo*. Having done

so and for the reasons given in the report and recommendation, the Court overrules Plaintiffs' objections and adopts the report and recommendation as its own order.

[D.E. 59] at 1, Ex. A.

This boilerplate language (*e.g.,* "Having done so"), issued 73mins before physical transfer, reflects a failure to conduct meaningful *de novo* review and a direct refusal to follow Fifth Circuit precedent imploring brief transfer order stays, constituting a clear abuse of discretion warranting mandamus.

By contrast, in *Cancer Step Outside the Box, LLC, et al. v. Dept. of State, et al.*, No. 3:24-cv-01465 (M.D. Tenn., Nashville Div.) (the *CSOB* case), just three days ago, Judge Trauger advanced a reasoned, point-by-point *de novo* review of nearly identical objections. Even where she disagreed, she addressed each issue directly, including judicial economy, venue fairness, and non-contracting parties. That is what due process demands, that is a legitimate *de novo* review. *That did not happen here, not even close.*

The procedural defects here are not isolated. The District Court's thoughtless "adoption" of the R&R produced a transfer Order infected by the following:

## 1. Premature Transfer Violated Fifth Circuit Law

The District Court transferred the case to N.D. Cal. 73mins after its Order, denying Plaintiffs any opportunity to seek appellate review as required by binding Fifth Circuit precedent.

### 2.  No Meaningful *De Novo* Review Conducted

The District Judge summarily adopted the R&R without addressing Plaintiffs' objections or engaging in independent legal analysis, violating Rule 72 and controlling precedent.

### 3.  State Law Conflict Was Ignored Entirely

The transfer Order failed to consider Texas's HB 20 and public policy protections, allowing private contracts to override active state law in violation of federalism principles.

### 4.  Misapplied The Law To The Wrong Claims

The District Court wrongly treated Plaintiffs' constitutional censorship claims as contract-based, contradicting its own findings and binding Fifth Circuit precedent like *Salesforce*.

### 5.  Jurisdictionally Improper For Many Defendants

The transfer disregarded the fact that most Defendants (Government and NGO Defendants) have no contractual ties to California and are not subject to jurisdiction there.

### 6.  X Engaged In Reverse Forum Shopping

X argued for California in this case and then for Texas in *CSOB*, exposing its strategic manipulation of forum selection clauses and undermining its own venue objections.

**7. California Courts Are Structurally Biased**

The N.D. Cal. Court has a well-documented history of judicial entwinement with Big Tech and distorted §230 rulings, making it fundamentally incapable of fair adjudication in this matter.

Each of these errors independently supports mandamus. Combined, they reveal a patently erroneous outcome with no other adequate remedy. Because transfer orders are interlocutory and not appealable as of right, mandamus is the sole avenue to correct the District Court's abuse of discretion. *See In re Volkswagen*, 545 F.3d at 309.

**C.    *Petitioners' Right To Mandamus Is Clear And Indisputable, As The District Court Abused Its Discretion***

"There can be no doubt … that mandamus is an appropriate means of testing a district court's §1404(a) ruling." *In re Volkswagen of America, Inc.*, 545 F.3d at 309. "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts. On mandamus review, we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result." *In re Volkswagen of America, Inc.* at 310.

Here, as now discussed, the District Court clearly abused its discretion in transferring this matter to the *prima facie* Big Tech biased N.D. Cal. Court, a patently erroneous result.

**1. The District Court Did Not Stay Its Transfer Order Before Transfer, In Direct Contravention Of Fifth Circuit Precedent**

The W.D. Tex. Court's *immediate* transfer of this action to the N.D. Cal. Court following the issuance of the April 2, 2025, transfer Order [D.E. 59] ran afoul of Fifth Circuit precedent, harming Plaintiffs in affording them no meaningful opportunity to seek this Court's review before the transfer took place and Petitioners were unnecessarily placed in an unraveling posture in a foreign jurisdiction. The transfer Order issued at 2:21 p.m. CST. That same day, at 3:34 p.m. CST (a mere 73mins later), this matter was transferred to the N.D. Cal. Court.

The District Court's swiftness of transfer *patently* violated Fifth Circuit precedent. This Court has more than once urged district courts to "prudently adopt a practice 'especially deserving of commendation': staying their venue-transfer orders for a short time so that opposing parties may have time to seek review, if warranted, on a less hurried/harried basis." *In re Chamber of Commerce of USA*, 105 F.4th at 312. This District Court's disregard for Fifth Court precedent warrants issuance of the requested writ.

**2. The District Court Did Not Engage In A Legitimate De Novo Review, In Contravention Of Federal Rules And Fifth Circuit Precedent**

Rule 72 requires, in pertinent part, as follows: "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* Here, the transfer Order [D.E. 59] did no such thing.

Petitioners (Plaintiffs at the time) timely put forth extensive, well-supported legal arguments and factual rebuttals in their March 21, 2025, Objection [D.E. 58], to the February 24, 2025, R&R, [D.E. 56]. The District Court's transfer Order [D.E. 59] adopting the R&R, however, does not provide any details on the *de novo* review process.

The District Court summarily adopted the R&R, stating only that it "ha[d] done" a *de novo* review, yet offered no substantive analysis; *i.e.*, the District Judge rubberstamped the Magistrate's erroneous conclusions without addressing any of Plaintiffs' detailed objections. *See* [D.E. 59]. Put differently, the transfer Order [D.E. 59] did not address any of the specific Plaintiffs objections [D.E. 58] or provide any independent reasoning or justification for transfer other beyond the R&R. This rubberstamp approach fails to, among other things, satisfy the requirements of Rule 72 (and 28 U.S.C. §636(b)(1)(C)), which demands *de novo* District Court Judge review of a R&R that has been timely objected to (as here). The District Court's failure to engage in a meaningful *de novo* review (*i.e.*, failure to adhere to Rule 72, *etc.*) is another reason the requested writ should issue.

An example of what a District Court's thorough and thoughtful transfer analysis *should* look like (absolutely not present here, in contravention of *de novo* review requirements) is Judge Trauger's July 14, 2025, Order *CSOB*, which is attached hereto as **Exhibit B** and incorporated fully herein by reference.

In *CSOB*, involving the same parties and the same attorneys as the instant case (at least regarding the Government Defendants and the Platform Defendants), a District Judge who did her job[3] properly DENIED the same Platform Defendants' (Meta, Google, X) transfer motions. Per *Denson*, this Court should, "as a matter of course," issue the requested writ, vacating the W.D. Tex. Court's transfer order, to "confine [the W.D. Tex. Court] to a lawful exercise of its prescribed authority," something the M.D. Tenn. Court admirably did in *CSOB* under virtually identical (if not identical) circumstances.

### 3. The W.D. Tex. Court Ignored Conflicts in State Law – The Transfer Nullifies Texas' Unique Public Policy Protections

Here, neither the R&R nor the transfer Order addressed Texas's HB 20 or its codified public policy interest in protecting digital speech. The R&R was issued before Plaintiffs filed their Objection and makes no mention of HB 20 or Texas' express *state* statutory protections. The District Court's adopting the R&R wholesale, without *de novo* review or any analysis of HB 20, allowed a private contract to override active state law (*i.e.,* contract around state law). This omission warrants mandamus, as it permits the nullification of a duly enacted state statute without judicial consideration.

---

[3] This Court has previously found that when "the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course." *U.S. v. Denson*, 603 F.2d 1143, 1145 (5th Cir. 1979) (en banc).

By contrast, in *CSOB*, Judge Trauger found no direct conflict between Tennessee and California public policy, stating that the laws "do not conflict" and "apply to different conduct." But this case is materially different – here, Plaintiffs invoked HB 20 as part of their state claims, and California law has no such equivalent protection. The Texas state law interest is not theoretical, it is central to the causes of action. A transfer would extinguish that state law (interest) entirely.

Whereas *CSOB* involved overlapping state interests with no distinguishable statutory collision, this case presents a live, unresolved legal conflict. The failure to consider or even acknowledge HB 20 is not a harmless omission, it is a woefully inappropriate statutory override justifying mandamus.

### 4. The District Court Clearly Relied On Erroneous Conclusions Of Law And Misapplied The Law To The Facts

As discussed above, the District Court, in effectuating transfer, erroneously concluded that any case merely relating to a platform defendant must necessarily "arise from" the provision of interactive computer services, thereby invoking the Platforms' TOS and the forum selection clauses ("FSCs") embedded therein. This oversimplified conclusion ignores a critical legal distinction – TOS govern interactive computer services, not editorial decisions or content moderation carried out in coordination with the Government to suppress protected speech.

The conduct at issue here (namely, the Platforms restraining Plaintiffs' speech at the Government's request) did not involve the routine provision of contractual

interactive computer services and accordingly did not "arise from" the Platforms' TOS. Rather, Plaintiffs' claims are "based on" a state-directed censorship scheme that involved editorial interference executed as part of that scheme.

Oddly, the R&R plainly acknowledged this at the outset: "Plaintiffs…initiated this suit based on Defendants' alleged participation in a scheme by the United States Government to 'silence [Plaintiffs'] competitive COVID-related speech.'" [D.E. 56] at 1. Yet just pages later, the RR&R contradicted itself by concluding: "Because Plaintiffs' claims arise from their use of Facebook and Twitter accounts and Meta and X Corp.'s alleged interference with that use, this case falls within the scope of the TOS." *Id.* at 8. This internal inconsistency, squarely objected to but summarily disregarded in the District Court's cursory adoption, underscores the fundamental legal mischaracterization driving the transfer Order.

Plaintiffs' claims either are "based on" participation in a Government censorship scheme that merely involved the use of a platform somewhere in the chain of causation, or they "arise from" the use of the Platforms services themselves. It cannot be both. As this Court held in *Salesforce*, "…the fact that third-party speech is involved somewhere in the chain of causation that led to a plaintiff's injuries does not mean that a plaintiff's claims necessarily treat a defendant as [the] publisher or speaker of that third-party speech." *Id.* at 795. The same logic applies here – just because the use of a platform is "involved somewhere in the chain of causation that

led to Plaintiff's injuries does not mean that a plaintiff's claims necessarily" arise out of the Platforms' TOS. The District Court's failure to appreciate this subtle distinction (by mischaracterizing the claims as contract-based rather than Government-directed censorship because the W.D. Tex. Court engaged in no legal duties analysis per *Salesforce*) warrants issuance of the requested writ.

By failing to evaluate whether Plaintiffs' claims arose from independent legal duties (wholly distinct from any contractual obligations) the W.D. Tex. Court disregarded binding Fifth Circuit precedent, including this Court's December 19, 2024, *Salesforce* decision. The W.D. Tex. Court conducted no meaningful legal duties analysis to assess the true nature of this action or to determine whether the FSCs should apply. Instead, the W.D. Tex. Court embraced a blanket presumption that all platform-related conduct necessarily stems from the TOS, a presumption this Court has already rejected.

This legal misapplication, compounded by the contradictory reasoning in the R&R, constitutes clear error warranting mandamus. There is no need to reinvent the wheel, Petitioners have already outlined numerous erroneous factual findings in their Objection [D.E. 58], Ex. A.

## 5. The Transfer Order Disregards Non-Contracting Defendants and the Risk of Improper Fracturing

The transfer Order erroneously treats all Defendants as if they are bound by identical FSCs. In truth, only Meta and Google (both headquartered in California,

20

though Zuckerberg has announced moving Meta to Texas) and X Corp. (now based in Texas) invoked such clauses. The remaining Defendants, including federal agencies and private NGOs, are not parties to any agreement with Plaintiffs and/or the Platforms and never consented to California venue.

Notably, NewsGuard (New York), the ISD (a U.K. nonprofit operating in Washington, D.C.), and the GDI (U.K.-based, operating from D.C.) are implicated solely for conduct in their home jurisdictions *and in Texas*, not California. There are no operative ties between these entities and California sufficient to establish general or specific jurisdiction.

The District Court failed to acknowledge the jurisdictional and contractual disconnect, instead compelling these non-consenting parties to defend themselves in a state with no legal or factual basis for asserting authority over them. This not only violates principles of judicial economy but also the Due Process Clause of the Fourteenth Amendment, which prohibits subjecting out-of-state defendants to litigation in a forum lacking minimum contacts.

The same concern was acknowledged in *CSOB,* where Judge Trauger acknowledged that at least some of the defendants did not agree to any FSC at all, and the inclusion of such defendants weighed against transfer. *See* Ex. B (namely §D). She further warned that having separate lawsuits in separate courts over these

claims would create a risk of inconsistent judgments and duplicative litigation, contrary to the interests of judicial economy. *See id.*

Those concerns are amplified here. Transferring this case to California forces non-contracting, non-California-based Defendants (*who are not subject to personal jurisdiction in that state*) to defend themselves in an unrelated forum. The inevitable result is *fractured* litigation – Meta and Google may belong in California, X's forum remains uncertain (discussed more below), and the remaining Defendants (including all non-platform, non-contracting entities such as the NGOs and federal agencies) are anchored outside California, all with relevant ties to Texas. This arrangement creates unnecessary duplication, invites conflicting outcomes, and imposes an unconstitutional burden on both Plaintiffs and Defendants. Preserving claims against the non-California parties would require parallel proceedings, defeating judicial economy and fairness. As Judge Trauger rightly determined in *CSOB*, the M.D. Tenn. Court was the only placed where all parties could all rightly be brought together in one action – same here, the W.D. Tex. Court is the only place where all parties can all rightly be brought together in one action.

Ironically, while the Government declined response here, it expressly took an opposite position in *CSOB*, insisting all Defendants should remain together to avoid fragmentation. That same rationale applies here – no legitimate purpose is served by severing this case based on private contracts applicable only to a minority of parties.

The selective deference to FSCs, while ignoring their inapplicability to the majority, demonstrates an arbitrary and untenable application of §1404(a). At a minimum, mandamus is warranted to safeguard the rights of non-contracting parties, preserve judicial coherence, and avoid the constitutional violations inherent in forcing several Defendants into a forum with no lawful basis for jurisdiction.

## 6. X's Forum Manipulation Undermines Its Position Entirely And Warrants Mandamus Relief

X's conduct across these two very closely related cases (this case and *CSOB*) reveals a deliberate pattern of forum manipulation cutting against the integrity of its current venue objections and supports the extraordinary relief Plaintiffs now seek. Here, X argued the case belonged in California under its FSCs. Yet just months later, in *CSOB*, X reversed course and claimed that the same FSC required transfer to Texas.

This reversal is not a trivial inconsistency, it is a strategic contradiction that speaks directly to the kind of abuse mandamus is designed to prevent. In *CSOB*, X argued that its updated TOS and relocation to Texas shifted the appropriate venue. But this case was filed after that same relocation and after those same updated TOS were in effect. If X's argument is to be taken seriously in *CSOB*, then Texas (not California) was the proper venue here all along, even assuming *arguendo* the TOS were applicable.

By advancing *diametrically* opposed venue arguments in two nearly identical actions, only months apart, involving very similar defendants, X has waived its ability to object to either forum. At minimum, it has conceded that Texas is an appropriate venue, if not now preferred. This opportunistic reverse forum shopping highlights why courts must scrutinize FSC enforcement carefully, particularly when they are used to dislodge Plaintiffs from their chosen and appropriate venue.

Mandamus is warranted here for exactly this reason. A writ is appropriate where a clear abuse of discretion has occurred, and where ordinary appeal would be inadequate to cure the harm. Allowing X's contradictory litigation positions to stand would endorse forum manipulation, distort the application of transfer tenets, and irreparably harm Plaintiffs by forcing them into a jurisdiction X itself has disavowed elsewhere.

This case exemplifies the precise circumstances that justify mandamus – the trial court gave dispositive weight to a FSC whose interpretation has been manipulated by a party with no consistent position. Without this Court's intervention, this manipulation will succeed, placing the Plaintiffs and the judicial process at an intolerable disadvantage.

Accordingly, X's own litigation behavior affirms the propriety of Texas venue and exposes the unfairness of the transfer. The requested writ should issue to correct

this abuse, prevent further forum manipulation, and restore confidence in the fair administration of venue doctrine.

### 7. The District Court Ignored Well-Documented Structural Bias And Systemic Misapplication of Law in the Northern District of California

Despite Plaintiffs raising well-supported objections establishing that the Northern District of California is structurally incapable of fairly adjudicating Big Tech-related cases, the issue received no substantive review at any stage. The R&R was issued before Plaintiffs filed their objection and did not address the argument at all. The transfer Order (in wholesale adoption of the R&R), likewise failed to mention it. And the W.D. Tex. refused to allow complaint amendment, an opportunity that would have allowed Plaintiffs to further develop the extensive record of judicial entanglement and legal evasion endemic to California's handling of such cases.

As a result, this core constitutional concern (implicating structural bias, due process, and the presumption of judicial neutrality) remains entirely unreviewed. It is as if Plaintiffs are forced to litigate against the procedural machinery of the court itself, rather than the underlying misconduct of Defendants. Mandamus is warranted precisely because such foundational defects cannot be waived, forfeited, or ignored.

Although Judge Trauger conducted an actual *de novo* review in *CSOB* (involving similar transfer objections), her reasoning reflects a fundamental misunderstanding of the nature and weight of Plaintiffs' concern with the California

federal judiciary. Judge Trauger acknowledged the *CSOB* plaintiffs' belief that defeat was inevitable in California, but concluded that that did not make it unfair for the *CSOB* plaintiffs to litigate in California.

Petitioners, however, do not merely "believe" they are unlikely to prevail in the N.D. Cal. Court. Rather, they have presented compelling, well-documented evidence that structural bias, judicial entanglement, and a two-decade pattern of distortion surrounding §230(c)(1) have rendered that forum legally incapable of delivering fair adjudication in Big Tech cases. The concern is not a subjective perception of hostility, but an objective, evidence-backed showing of systemic misapplication of law, judicial misconduct, and irreconcilable conflict between California and Texas public policy and law. This is not conjecture, it is structural, historical, and demonstrably ongoing.

The record here shows that N.D. Cal. Court routinely misapplies §230(c)(1) as a blanket immunity, even in cases involving first-party misconduct and Government-directed censorship. The most telling example is *Fyk v. Facebook*, *Inc.*, No. 18-cv-05159-HSG (N.D. Cal.), where the initial presiding judge held substantial, undisclosed financial interests in tech stocks and failed to recuse for over five years, only doing so after irreversible bias had tainted the record. The *Fyk* case was then reassigned to Judge Gilliam, Jr. This case was also initially transferred to Judge Gilliam, Jr., who mysteriously recused himself, citing a conflict in this

Government/Big Tech censorship matter. Yet, tellingly, he saw no such conflict in *Fyk*, where Facebook explicitly invoked a Government defense and Fyk raised constitutional deprivation claims directly implicating the court's own conduct.

Judge Gilliam, Jr. subsequently dismissed Fyk's Rule 5.1 constitutional challenge (brought properly under Rule 60(d)(1) as an independent action) as "freestanding" (a term which, far from disqualifying the challenge, confirms its validity under Rule 60(d)), which requires that such motions be "expressly independent" of the underlying judgment. His misstatement of black-letter law, paired with selective recusals and sanction threats aimed at the same counsel representing Petitioners here, further exposes the entrenched culture of judicial capture in that district.

These are not isolated procedural mistakes. They reveal a systemic pattern of institutional bias and judicial entwinement with Big Tech interests, precisely the kind of structural defect mandamus relief is designed to correct.

Contrary to seemingly popular belief, we are not the only ones who have observed the N.D. Cal. Court's consistent bias.[4] This Court need look no further than *Salesforce* (5th Cir.), *Anderson* (3d Cir.), and *Henderson* (4th Cir.), which all arose

---

[4] Attached hereto as **Exhibit C** is a SCOTUS amicus curiae brief filed in *Fyk v. Facebook, Inc.*, No. 24-1116, where undersigned's counsel (Jason Fyk) was the Petitioner. This amicus curiae brief lays bare how unhinged the N.D. Cal. Court is as it concerns Big Tech disputes.

in direct response to the Ninth Circuit's increasingly illegitimate interpretation of §230 and the overbroad precedents emanating from California. In *Salesforce*, this Court demanded *de novo* review of §230 precisely because of the contradictory and overbroad precedents emanating from California. These rulings were made necessary only because N.D. Cal. and the Ninth Circuit consistently refuse to apply §230 according to its statutory text, legislative purpose, or constitutional limits. To presume judicial neutrality in that environment is not only disingenuous, but also dangerous.

And the harm goes beyond §230. If this transfer stands, it would nullify Texas' statutory protections, including HB 20, which codifies the state's public policy interest in preventing political viewpoint discrimination on digital platforms. California offers no such protections. To force Texans to litigate their constitutional claims in the very jurisdiction that enabled the censorship they now challenge is not comity, it is coerced jurisdictional surrender.

Even the Platforms themselves tacitly acknowledge this bias. Meta is relocating to Texas, citing California's dysfunctional judicial environment. X has already moved for similar reasons. Strangely, in this case, X initially sought transfer to California, but in the following *CSOB* case, X reversed its FSC course and argued for Texas under the very same FSC and conditions. This is not a principled stance

on forum neutrality, it is clear evidence of strategic forum manipulation, designed to exploit favorable jurisdictions and evade meaningful scrutiny.

Ultimately, by treating N.D. Cal. as a neutral forum despite overwhelming evidence to the contrary, the District Court endorsed a fatally flawed assumption. Plaintiffs are not seeking to escape the law by remaining in Texas, they are seeking to enforce it fairly in a forum where the law will be applied in accordance with its text, intent, and constitutional boundaries. A transfer that guarantees procedural disadvantage, eliminates state-conferred rights, and returns Plaintiffs to the very forum that caused the harm cannot be considered fair or just. *A writ of mandamus is not only warranted, it is essential to prevent irreparable injury.*

### D.    *Issuance Of The Writ Is Appropriate Here*

As discussed above, Petitioners clearly satisfy the first two requirements for issuance of a writ, namely that Petitioners have no other adequate means to attain the relief they seek, and that they have satisfied the burden of showing that their right to issuance of the writ is clear and indisputable. Even once these factors are satisfied, however, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re U.S.*, 397 F.3d 274, 282 (5th Cir. 2005).

This Court has previously found that when "the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed

authority, the court should issue the writ almost as a matter of course." *U.S. v. Denson*, 603 F.2d 1143, 1145 (5th Cir. 1979) (en banc). That is precisely the situation here, where the District Court exceeded its prescribed authority for all the reasons discussed above.

In *In re Chamber of Commerce*, this Court determined that writ relief was appropriate under the circumstances because that "was a case where the issues implicate[d] not only these parties' interests, but the interests of all parties who litigate against government defendants located in D.C. and seek to have their cases heard by judges and juries outside the nation's capital." *Id.*, 105 F.4th at 312. This Court also held that writ relief is appropriate when "we clarify to this district court and others how to engage in the §1404(a) transfer analysis." *Id.*

This Court has also advised district courts more than once as follows: "We again exhort our district court colleagues throughout the circuit to stay venue-transfer orders for a brief time to avoid the frenzy of unnecessarily rushed mandamus proceedings." *Id.* at 302 n.17.[5]

Here, on the merits (understandably not before this Court, but worth reiterating) this case has wide-reaching implications beyond the immediate case (the Censorship Industrial Complex around which this case revolves, involving the

---

[5] Indeed, other Texas District Courts properly afford stays after a transfer order. *See, e.g.,* Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024).

conspiratorial / joint participation web between the Government Defendants,
Platform Defendants, and NGO Defendants thoroughly discussed in the Amended
Complaint, has the continuance of First Amendment and Fifth Amendment rights,
for example, entirely on the line … involving all Americans). Again, if the transfer
of this case to the N.D. Cal. Court stands, this case is dead in the water (not at all
because of this case's righteous merits, but because of California's virtually
impenetrable awry position that all things Big Tech are *carte blanche* CDA
immune). When determining the appropriateness of a writ under the particular
circumstances at issue, this Court often looks to the "nature of the 'sanction' imposed
by the trial court" to determine whether the trial court abused its discretion. *In re
U.S.*, 397 F.3d 274, 286-287 (5th Cir. 2005). Here again, the facts and circumstances
surrounding the transfer Order make clear that the writ is fully appropriate, given the
grave consequences looming as to all Americans in relation to the Censorship
Industrial Complex at the heart of Petitioners' case (which such case, again, is laced
with upholding Constitutional rights), as well as the significant harms imposed on
the Plaintiffs, if the transfer Order stands.

Here, like in *In re Chamber of Commerce*, this case has wide-reaching
implications, beyond this case, for parties that seek to litigate against Big Tech
Defendants in their chosen forum (*In re Chamber of Commerce* involved litigating
against Government Defendants in a chosen forum). As was the case in *In re*

*Chamber of Commerce*, this case presents yet another opportunity for this Court to provide guidance to district courts facing requests for inter-circuit transfers, this time in the vein of cases involving Big Tech Defendants having nothing to do with the ordinary provision of interactive computer services (at least not anywhere to be found in, say, the first ten or so links in the causal chain), and, most importantly, in accordance with this Court's December 2024 *Salesforce* precedent (which, again, the transfer Order here inherently contravenes).

In *In re Red Barn Motors, Inc.,* this Court recognized that "several circuits, where appropriate, have endorsed the method of directing the transferor district court to request that the transferee district court return the case." *Id.,* 794 F.3d 481, 484 (5th Cir. 2015). This Court further held that the decision to direct the transferor court to request a return of the case should be reserved for "extreme" cases, and that a party seeking relief from a transfer order must exercise diligence. *Id.* at 485.

This is the type of extreme case that warrants the relief requested herein. The W.D. Tex. Court abruptly transferred the case to the N.D. Cal. Court only 73mins after docketing the transfer Order [D.E. 59], depriving Petitioners / Plaintiffs an opportunity to seek this Court's assistance. Moreover, the out-of-circuit transfer was plainly ultra vires, in violation of this Court's repeated exhortations to stay such transfers to allow affected parties to take an orderly appeal/petition.

Under the circumstances (again, a 73mins transfer, which shocked undersigned), Petitioners / Plaintiffs were diligent and expeditious in seeking mandamus relief. Shortly after transfer to the N.D. Cal. Court, Plaintiffs filed an Emergency Motion to Stay these Proceedings 90-Days [D.E. 75], *see* Ex. A, so as to allow Plaintiffs a meaningful opportunity to Petition this Court, which, again, such opportunity should have been afforded by the W.D. Tex. Court before unnecessarily complicating matters vis-à-vis the 73mins transfer. The N.D. Cal. Court rightly granted that Emergency Motion, allowing Plaintiffs up to and including July 17, 2025, to petition this Court. *See* [D.E. 78], *see* Ex. A.[6] Petitioners have timely filed this Petition within the time afforded to them *via* N.D. Cal. Court Order, and in compliance with the Fifth Circuit's Practitioners' Guide. *See id.* at 14 ("Extraordinary writs are usually matters of great urgency; no time limit is prescribed").

## V.    CONCLUSION

For the foregoing reasons, Petitioners, Webseed, Inc., and Brighteon Media, Inc., respectfully request that this Court, as soon as practicable, grant their petition and issue a writ of mandamus that directs transfer of this matter back to the W.D. Tex. Court.

---

[6] In the vein of record completeness, the most recent N.D. Cal. Court filing (a joint status report and Court Order) is also included in composite Exhibit A.

## VI.    CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Petition complies with the type-volume limitation of FRAP 21 because the principal brief (sans certificates and cover pages) does not exceed 7,800, this Petition contains 7,515 words. This Petition complies with the typeface requirements of FRAP 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of FRAP 32(a)(6) because this brief is prepared in a proportionately spaced typeface using Times New Roman 14-point font.

## VII.   CERTIFICATE OF SERVICE

Pursuant to FRAP 25(d) and 5th Cir. R. 25.2.5, undersigned counsel hereby certifies that on July 16, 2025, he electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM / ECF system. Participants in the case who are registered CM / ECF users will be served by the appellate CM / ECF system. More specifically, all the Respondents / Defendants counsel listed in the Certificate of Interested Persons section above (which such section also includes all pertinent contact information for such counsel) are receiving service of this document on this day, also including counsel for all the Government Defendants, Pardis Gheibi, DOJ-Civ Civil Division, Federal Programs Branch, 1100 L Street NW, Room 11526, Washington, DC 20005, 202-305-3246, pardis.gheibi@usdoj.gov.

Moreover, pursuant to FRAP 21(a), undersigned counsel hereby certifies that he will immediately file (on July 16, 2025, subsequent to the filing of this Petition), a notice with the initial District Court (W.D. Tex., No. 1:24-CV-576-RP) and a notice with the District Court (N.D. Cal., No. 3:25-CV-03020-AMO) to which this case was transferred, advising of the filing of this Petition, which such process will also double-ensure that all defense counsel of record receive notice of this Petition.

Dated: July 16, 2025.

Respectfully Submitted,

**GREYBER LAW, PLLC**

*/s/* Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Texas Bar No. 24103030, 5th Cir. Admitted
9170 Glades Rd., #161
Boca Raton, Florida  33434
(561) 702-7673; (833) 809-0137 (f)
jgreyber@greyberlaw.com
*Attorney for Petitioners (Lead Counsel)*

**POLI, MOON & ZANE, PLLC**
**Jeffrey G. Zane, Esq.**
Texas Bar No. 24095197
807 S. Rock St., Ste. 101
Georgetown, TX 78626
(512) 508-4693; (602) 857-7333 (f)
jzane@pmzlaw.com
*Attorney for Petitioners*