No. 25-50572

---

*In the*
**UNITED STATES COURT OF APPEALS**
*For the*
**FIFTH CIRCUIT**

---

IN RE WEBSEED, INC. and BRIGHTEON MEDIA, INC.,
*Petitioners.*

---

ON PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS
CASE NO. 1:24-CV-576-RP (PITMAN, J.)

---

**RESPONDENT X CORP.'S RESPONSE IN OPPOSITION TO
PETITION FOR WRIT OF MANDAMUS**

---

KENNETH M. TRUJILLO-JAMISON
WILLENKEN LLP
707 WILSHIRE BLVD., SUITE 4100
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 955-9240
FACSIMILE: (213) 955-9250

MICHAEL R. ABRAMS
STONE HILTON PLLC
600 CONGRESS AVE., SUITE 2350
AUSTIN, TX 78701
TELEPHONE: (737) 465-3897

*Attorneys for Respondent X Corp.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Petitioners:** Webseed, Inc. and Brighteon Media, Inc., represented by Greyber Law, PLLC attorney Jeffrey L. Greyber; and Poli, Moon, & Zane, PLLC attorney Jeffrey G. Zane.

**Defendants-Respondents:**

Meta Platforms, Inc., represented by Kirkland & Ellis LLP attorneys Kasdin M. Mitchell, Michael P. Esser, Zack C. Ewing, Jordan L. Greene, and Shane O'Connor.

Google, LLC, represented by Wilmer, Cutler, Pickering, Hale and Dorr LLP attorneys Joshua H. Lerner, Ari Holtzblatt, Sonal Mehta, and James Bor-Zale and by Scott Douglass McConnico LLP attorney Paige Arnette Amstutz.

NewsGuard Technologies, Inc., represented by Haynes & Boone LLP attorneys Laura Lee Prather, Catherine L. Robb, Michael J. Lambert, and Jason T. Lao.

[THE REMAINDER OF THIS PAGE

HAS INTENTIONALLY BEEN LEFT BLANK.]

X Corp., represented by Willenken LLP attorney Kenneth M. Trujillo-Jamison and Stone Hilton P.L.L.C. attorney Michael Abrams.

/s/ Kenneth M. Trujillo-Jamison

Kenneth M. Trujillo-Jamison
*Attorneys for Respondent X Corp.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS…………………………………………i

TABLE OF CONTENTS………………………………………………………...…..…i

TABLE OF AUTHORITIES……………………………………………………….....iii

INTRODUCTION.........................................................................................................1

ISSUES PRESENTED…………………………………………………………….2

STATEMENT OF CASE…………………………………………………………...2

    A.    PETITIONERS' COMPLAINT............................................................2

    B.    PETITIONERS AGREED TO TWITTER'S RELEVANT TERMS OF SERVICE.................................................................5

    C.    THE DISTRICT COURT GRANTS THE TRANSFER MOTIONS AFTER REVIEWING *DE NOVO* AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION .......................................................7

ARGUMENT..................................................................................................11

I.    THE PETITION SHOULD BE DENIED ....................................................11

    A.    PETITIONERS FAIL TO SHOW A "CLEAR AND INDISPUTABLE" RIGHT TO ISSUANCE OF THE WRIT ...........12

        1.    Petitioners Fail to Show the District Court Erred at All, Much Less Committed a Clear Abuse of Discretion that Produced a Patently Erroneous Result.....................................13

            a.    The District Court Did Not Clearly Abuse Its Discretion in Determining the Relevant Terms' Forum Selection Clause Was Mandatory ......................14

            b.    The District Court Did Not Clearly Abuse Its Discretion in Determining the Relevant Terms' Forum Selection Clause Applies to Petitioners' Claims Against X Corp..................................................16

i

        c.     The District Court Did Not Clearly Abuse Its Discretion in Determining the Relevant Terms' Forum Selection Clause Is Valid and Enforceable.........19

     2.    Petitioners' Other Arguments Fail to Demonstrate the District Court Clearly Abused Its Discretion............................24

  B.   PETITIONERS HAVE AN ALTERNATIVE AND ADEQUATE MEANS OF RELIEF ..................................................28

  C.   MANDAMUS RELIEF WOULD BE INAPPROPRIATE IN ANY EVENT. .....................................................................................29

II.   THIS IS NOT AN "EXTREME CASE" MERITING A REQUEST FOR INTER-CIRCUIT RE-TRANSFER ............................................................30

CONCLUSION ...................................................................................................33

CERTIFICATE OF COMPLIANCE……………………………………………...34

CERTIFICATE OF SERVICE……………………………………………………34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
571 U.S. 49 (2013) .............................................................................................13

*Bilodeau v. Ahern Rentals, Inc.,*
2021 WL 8016841 (S.D. Tex. Aug. 20, 2021)....................................................15

*Cancer Step Outside the Box, LLC v. Dep't of State,*
No. 3:24-CV-01465 (M.D. Tenn.) .....................................................................26

*Cheney v. U.S. Dist. Ct. for D.C.,*
542 U.S. 367 (2004) .................................................................................... 11, 29

*Def. Distributed v. Bruck,*
30 F.4th 414 (5th Cir. 2022)...............................................................................31

*Davis v. Meta Platforms, Inc.,*
No. 4:23-cv-01001,
2023 WL 4670491 (E.D. Tex. July 20, 2023)............................ 14, 16, 21, 22, 23

*Def. Distributed v. Bruck,*
30 F.4th 414 (5th Cir. 2022)...............................................................................31

*Don't Tread On Us, LLC v. Twitter, Inc.,*
No. 1:23-CV-20943-KMM, 2023 WL 7277183 (S.D. Fla. May 19, 2023) ........15

*Force v. Facebook, Inc.,*
304 F. Supp. 3d 315 (E.D.N.Y. 2018)................................................................18

*Habets v. Waste Mgmt., Inc.,*
363 F.3d 378 (5th Cir. 2004)........................................................................ 24, 25

*Haynsworth v. The Corp.,*
121 F.3d 956 (5th Cir. 1997)........................................................................ 20, 21

*Howard v. Goldbloom,*
241 Cal. Rptr. 3d 743 (Cal. Ct. App. 2018) .......................................................16

*In re Chamber of Commerce of the U.S.A.,*
105 F.4th 297 (5th Cir. 2024)....................................................................... 24, 27

*In re Depuy Orthopaedics, Inc.,*
870 F.3d 345 (5th Cir. 2017)..............................................................................12

*In re Lloyd's Register N. Am., Inc.,*
780 F.3d 283 (5th Cir. 2015)....................................................................... 12, 13

*In re Nationwide Ins. Co. of Am.,*
494 S.W.3d 708 (Tex. 2016)..............................................................................23

iii

*In re Parish*,
    81 F.4th 403 (5th Cir. 2023) ............................................................ 12, 28

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023) ....................................................................29

*In re Planned Parenthood Federation of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ........................................................... 11, 13

*In re Red Barn Motors, Inc.*,
    794 F.3d 481 (5th Cir. 2015) ............................................. 12, 13, 30, 31, 32

*In re Southwestern Mobile Homes, Inc.*,
    317 F.2d 65 (Ct. App. Tex. 1963) ............................................... 12, 30

*In re Space Expl. Techs. Corp.*,
    No. 24-40103, 2024 WL 982501 (5th Cir. Feb. 26, 2024) .......................... 30, 31

*In re Sw. Mobile Homes, Inc.*,
    317 F.2d 65 (5th Cir. 1963) ....................................................................30

*In re Volkswagen of Am.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................ 25, 28, 29

*JPay LLC v. Houston*,
    No. 3:23-CV-1875-S, 2024 WL 3687099 (N.D. Tex. Aug. 5, 2024) .................15

*Koetting v. Thompson*,
    995 F.2d 37 (5th Cir. 1993) ....................................................................25

*Korman v. Princess Cruise Lines, Ltd.*,
    32 Cal. Rptr. 3d 668 (Cal. Ct. App. 2019) ..........................................14

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ....................................................................................20

*Marinechance Shipping, Ltd. v. Sebastian*,
    143 F.3d 216 (5th Cir. 1998) ....................................................................13

*Moates v. Facebook Inc.*,
    No. 4:20-cv-896-ALM-KPJ,
    2021 WL 3013371 (E.D. Tex. May 14, 2021) ........................... 14, 16, 17, 21, 24

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
    69 F.3d 1034 (9th Cir. 1995) ....................................................................14

*Nedlloyd Lines B.V. v. Super. Ct.*,
    3 Cal. 4th 459 (1992) ..............................................................................18

*Noble House, LLC v. Certain Underwriters at Lloyd's, London*,
    67 F.4th 243 (5th Cir. 2023) ........................................................ 20, 21, 22

*Olinick v. BMG Entm't*,
    42 Cal. Rptr. 3d 268 (Cal. Ct. App. 2006) ............................................ 14, 17

iv

*PCL Civil Constructors, Inc. v. Arch Ins. Co.*,
  979 F.3d 1070 (5th Cir. 2020)................................................................19

*Philadelphia Indem. Ins. Co. v. White,*
  490 S.W.3d 468 (Tex. 2016)................................................................23

*Posnanski v. Gibney*,
  421 F.3d 977 (9th Cir. 2005)..............................................................29

*Ramos v. Super. Ct.*,
  239 Cal. Rptr. 679 (Cal. Ct. App. 2018) ...........................................16

*Trump v. Twitter, Inc.*,
  No. 21-CIV-22441, 2021 WL 8202673 (S.D. Fla. Oct. 26, 2021) ............. 15, 19

*United States v. Moon*,
  129 F.3d 609, 1997 WL 681098 (5th Cir. 1997) ................................27

*Warren v. Miles*,
  230 F.3d 688 (5th Cir. 2000)..............................................................25

*Weber v. PACT XPP Techs., AG*,
  811 F.3d 758 (5th Cir. 2016)........................................................ 14, 15, 19

**Statutes**
Tex. Stats. §§143A.001-143A.008 ............................................................5

Texas Free Enterprise and Antitrust Act of 1983,
  Tex. Stats. § 15.05(a) and (b)................................................................5

**Rules**
Rule 72 ......................................................................................................24

**INTRODUCTION**

When petitioners Webseed, Inc. and Brighteon Media, Inc. (collectively, "Petitioners") created and used their accounts on Twitter, they necessarily agreed to the relevant versions of Twitter's Terms of Service.[1] Those terms contain a forum selection clause providing, in relevant part, that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States . . . ." Petitioners nonetheless sued X Corp. in the Western District of Texas, alleging claims that squarely relate to their use of Twitter. X Corp. invoked its mandatory forum selection clause to transfer the case to the Northern District of California, where Petitioners had agreed to litigate their claims. The District Court correctly determined that the forum selection clause was mandatory, applied to Petitioners' claims, and was valid and enforceable, and accordingly transferred this action to the Northern District of California.

Petitioners now protest transfer based on unsubstantiated allegations of "biased" Northern District of California judges and the District Court's purported procedural improprieties and "thoughtless" order. These arguments are meritless. They come nowhere close to demonstrating the "exceptional circumstances"

---

[1] "Twitter," the online social media platform, has since been re-branded as "X." For ease of understanding, this response continues to refer to the platform as "Twitter."

1

required for issuance of a writ of mandamus. More crucially, they are a distraction from the central, dispositive issue, which Petitioners avoid in their Petition: their claims are squarely encompassed by the mandatory forum selection clause. Having no valid objection to the forum selection clause's application, Petitioners cannot evade the outcome it requires: transfer to the Northern District of California.

X Corp. accordingly requests this Court deny the Petition.

## ISSUES PRESENTED

1.      Whether Petitioners are entitled to mandamus relief from the District Court's grant of X Corp.'s motion to transfer based on the mandatory forum selection clause included in the relevant versions of Twitter's Terms of Service.

2.      Whether, even if Petitioners meet the elements for mandamus relief, this is an "extreme case" meriting a request to re-transfer this case from the Northern District of California.

## STATEMENT OF THE CASE

### A.      Petitioners' Complaint

On May 27, 2024, Petitioners filed a complaint in the U.S. District Court for the Western District of Texas. There, Petitioners allege they operate websites such as NaturalNews.com, Brighteon.com, and HealthRanger.com that discuss "human rights issues," "ways to optimize health," and "'controversial' life issues" and which have "reached millions of readers." X Corp. Appendix ("App'x") 007–8,

¶¶ 12–14, 20. They also allege they "actively endorse / promote, among other things, holistic approaches to bettering one's health that are contrary to the [federal] Government's COVID vaccine 'mandates.'" App'x 017, ¶ 48.

Petitioners also allege the federal government tried to "eradicate" Petitioners from social media platforms because the government purportedly wanted to "silence" Petitioners' "COVID-related speech involving viewpoints that do not square with those of the Government." App'x 003, ¶ 2. According to Petitioners, the U.S. Department of State, Global Engagement Center, Department of Defense, and Department of Homeland Security (collectively, the "Government") allegedly funded and developed "private censorship enterprises and their associated censorship technology / 'tools.'" App'x 003, 0130. The alleged "censorship enterprises" are (1) NewsGuard Technologies, which allegedly developed the NewsGuard "rating system for news and information websites" (App'x 013); (2) the Institute for Strategic Dialogue ("ISD"), which allegedly provides analysis and "advocate[s] policy solutions" to governments worldwide (App'x 014); and (3) Global Disinformation Index ("GDI"), which allegedly provides data to "policymakers and business leaders on how to combat disinformation" (App'x 014 –015), all of which are non-governmental entities (App'x 010). The "tools" of NewsGuard Technologies, ISD, and GDI (collectively, "Tool Defendants") allegedly "peg Plaintiffs as sources of misinformation." App'x 017.

Petitioners further allege the Government "coerc[ed]" and "guid[ed]" respondents Meta, Google, and X Corp. (whom Petitioners in their complaint refer to as the "Platform Defendants") into using the "tools" of the Tool Defendants to "blacklist" Petitioners and "remove and reduce (*i.e.*, censor) Plaintiffs' ability to speak freely" and "advertise [their] products" on the Platform Defendants social media platforms. App'x 018, 048. Petitioners allege that Meta operates the social media platform Facebook, that Google operates an unnamed platform, and that X Corp. operates Twitter. App'x 003–005, 012–013. Petitioners allege the purported censorship Meta's, Google's, and X Corp.'s respective social media platforms caused Petitioners to suffer a loss of "advertising revenue / web trafficking monies" and "reduc[ed] the circulation of Plaintiffs' reporting and speech." App'x 016–017.

Based on these allegations, Petitioners assert twelve claims: (1) "abridgment" of Plaintiffs' right to freedom of speech, against all defendants; (2) "abridgment" of Plaintiffs' right to freedom of the press, against all defendants; (3) "*ultra vires* non-final agency action," against the Government only; (4) "unlawful final agency action," against the Government only; (5) "*ultra vires* action beyond constitutional bounds," against the Government only; (6) violation of the Texas Free Enterprise and Antitrust Act of 1983, Tex. Stats. § 15.05(a) and (b), against the Tool Defendants and the Platform Defendants; (7) violation of the

Texas Discourse on Social Media Platforms, Tex. Stats. §§143A.001-143A.008, against the Tool Defendants and the Platform Defendants; (8) negligence, against the Tool Defendants and the Platform Defendants; (9) tortious interference with business relations and prospective economic advantage, against the Tool Defendants and the Platform Defendants; (10) negligent misrepresentation, against the Platform Defendants; (11) fraud, against the Platform Defendants; and (12) promissory estoppel, against the Platform Defendants. App'x 068–089. Petitioners request injunctive relief and damages of "more than $25,000,000.00." App'x 077–078, 083–084, 086–087, 088, 089.

**B.     Petitioners Agreed to Twitter's Relevant Terms of Service**

Plaintiffs allege they operate various websites, including NaturalNews.com, Brigteon.com, and HealthRanger.com, though they do not allege the handles for their Twitter accounts. App'x 091-092. But X Corp.'s investigations reflect that two Twitter accounts are associated with those websites: @BrighteonTV and @HealthRanger. App'x 125. X Corp.'s investigations also show that the account @BrighteonTV was created in October 2023 and that Petitioners agreed to the relevant version of the Twitter Terms of Service ("Relevant Terms"). App'x 010. Those investigations also show that the account @HealthRanger was created in 2008; that Petitioners agreed to the 2008 version of the Twitter Terms when that account was created; that Petitioners consented to the Relevant Terms; and that

Petitioners have continued to use the @HealthRanger account. App'x 010-011.

All versions of the Relevant Terms give X Corp. the power to revise the terms of service. App'x 129; 140; 150; 160; 171; 183; 195; 207; 219; 234; 256; 288; 319; 356; 397; 437; 477; 515–516; 544. All versions of the Twitter Terms of Service since version 2, including the Relevant Terms, provide that when a user continues to use Twitter after the Terms of Service have been revised, the user "agree[s] to be bound by the revised Terms." App'x 129; 140; 150; 160; 171; 183; 195; 207; 219; 234; 256; 288; 319; 356; 397; 437; 477; 515–516; 544.

In addition, all versions of the Relevant Terms include a forum selection clause that requires disputes between the user and X Corp. related to their use of Twitter to be filed in San Francisco County, and a choice of law provision that requires the application of California law.[2] App'x 129; 140; 150; 160; 171; 183; 195; 207; 219; 234; 256; 288; 319; 356; 397; 437; 477; 515–516; 544. The Relevant Terms, which were effective from September 29, 2023 to November 15, 2024—and, therefore, effective when Petitioners filed this suit in May 2024— provide: "All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United

---

[2] On November 15, 2024, after Petitioners sued, X Corp. amended the forum selection clause in its Terms of Service to designate the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas as the exclusive fora for lawsuits arising under the Terms of Service, and its choice of law provision to require the application of Texas law.

6

States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum." App'x 544. The Relevant Terms also provide that "[t]he laws of the State of California . . . will govern these Terms and any dispute that arises between you and us." App'x 545.

## C. The District Court Grants the Transfer Motions After Reviewing *De Novo* and Adopting the Magistrate Judge's Report and Recommendation

On September 27, 2024, each of the Platform Defendants moved to transfer this action to the Northern District of California, invoking the mandatory forum selection clauses in their respective terms of service. App'x 094–119; 606–607. No defendant opposed transfer of the entire case to the Northern District of California. The motions to transfer were fully briefed on November 12, 2024.

The District Court referred the Platform Defendants' transfer motions to a magistrate judge. On February 24, 2025, United States Magistrate Judge Dustin M. Howell issued a thorough and detailed report recommending that the motions to transfer be granted ("R&R"). App'x 561–579.

As for X Corp, the Magistrate Judge first found that Petitioners "agreed to X Corp.'s [Terms of Service] in 2008 and have consented to the current terms [*i.e.*, Relevant Terms] by continuing to use Twitter." App'x 567. The Magistrate Judge also found that the Relevant Terms' forum selection clauses were mandatory because they required that "[a]ll disputes related to the [Relevant Terms] will be

*brought solely in the federal or state courts located in San Francisco County, California*, United States," and therefore "affirmatively requires that all disputes be resolved in California." App'x 570. In addition, the Magistrate Judge found that "because all of Plaintiff's claims concern their use of [the Platform Defendants'] platforms, the parties' dispute is sufficiently related to the [relevant Terms of Service]." App'x 571–572.

The Magistrate Judge carefully considered and rejected each of Petitioners' arguments that the clauses were purportedly unenforceable, including that the clauses were "the product of overreach and fraud," transfer to California would "deprive [Petitioners] of their day in court," and would contravene public policy. App'x 572–575. As the Magistrate Judge explained, "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it," but Petitioners "make *no argument* that the inclusion of the FSCs [*i.e.*, the forum selection clauses] themselves was the product of fraud or overreaching." App'x 573. The Magistrate Judge also determined that Petitioners' "only" argument that enforcement of the forum selection clauses would deprive them of their day in court was "unsubstantiated accusations" of "Big Tech bias," which were insufficient to "demonstrate that they will be 'deprived of [their] day in court because of the grave inconvenience or unfairness of the selected forum.'" App'x 574.

The Magistrate Judge also concluded that Petitioners "fail[ed] to demonstrate that the FSCs would contravene" Texas public policy, where the contention again was based on the same "unsupported allegations" of "bias," coupled with the erroneous contention that "transfer would foreclose" Petitioners' Texas law claims. App'x 574. As the Magistrate Judge explained, "whether Texas statutory claims may be asserted in this case is unrelated to the forum analysis." App'x 574. The Magistrate Judge also explained that Petitioners' "vague assertions" that Texas has a "'public interest in protecting its workforce and economy'" were insufficient "to overcome the FSCs' enforceability," particularly where "Texas public policy strongly favors freedom of contract, including the freedom to agree to an FSC." App'x 575.

Lastly, the Magistrate Judge carefully considered each of the four factors that might constitute "extraordinary circumstances" to overcome transfer, and concluded, that while court-congestion and conflict-of-laws factors were neutral, both the local-interest and familiarity with law factors favored transfer, and therefore "no extraordinary circumstances weigh against transfer in this case." App'x 575–578.

On March 21, 2025, Petitioners filed objections to the R&R. App'x 581. Ten days later, the District Court issued an order adopting the R&R and transferring the case from the Western District of Texas to the Northern District of California.

App'x 606. There, the District Court stated it had "review[ed]" the R&R "*de novo*." *Id.* The District Court further explained that "[h]aving done so and for the reasons given in the report and recommendation, the Court overrules Plaintiffs' objections and adopts the report and recommendation as its own order." *Id.* On April 2, 2025, the District Court transferred the case from the Western District of Texas to the Northern District of California.

On July 16, 2025—nearly three months later—Petitioners filed a petition for writ of mandamus.

## SUMMARY OF ARGUMENT

This Court should not issue a writ of mandamus. Petitioners fail to show the District Court erred—much less clearly abused its discretion—in granting X Corp.'s motion to transfer. Petitioners have an alternative and adequate means of seeking the relief they seek in the Ninth Circuit, and they have failed to demonstrate that mandamus relief would be appropriate under these circumstances. Having failed to establish any, much less all, of the three elements for obtaining a writ of mandamus, the Petition should be denied.

Even had Petitioners met the required elements to obtain the writ (they did not), the Petition still should be denied because Petitioners fail to show this is the sort of "extreme case" to warrant inter-circuit re-transfer. This Court lost jurisdiction after this case was transferred to the Northern District of California

over four months ago. Petitioners waited months to file their Petition, and therefore unreasonably delayed seeking mandamus relief. In short, this case is far from "extreme"; rather, it involves the District Court's routine application of the Relevant Terms' forum selection clause to claims that squarely relate to Plaintiffs' use of Twitter.

The Petition accordingly should be denied.

## ARGUMENT

## I.   <u>THE PETITION SHOULD BE DENIED</u>

Petitioners have not demonstrated any abuse of discretion in the District Court's order transferring the case to the Northern District of California, much less made a showing of any "extraordinary cause[]" that would justify such an "extraordinary remedy." *In re Planned Parenthood Federation of Am., Inc.,* 52 F.4th 625, 629 (5th Cir. 2022) (citation omitted). Issuance of the writ "is warranted only by 'exceptional circumstances amounting to a judicial usurpation' or 'a clear abuse of discretion.'" *Id.* (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004)). Accordingly, the petitioner "must show: (1) that there is a 'clear and indisputable' right to the writ; (2) that there are 'no other adequate means to attain the relief' requested; and (3) that the appellate court's exercise of discretion to issue the writ would be 'appropriate under the circumstances.'" *In re Parish*, 81 F.4th 403, 409 (5th Cir. 2023) (citation omitted). Further, "using mandamus to

undo a completed inter-circuit transfer risks 'provoking a possible conflict between the Circuit,'" and therefore is appropriate "only [in] 'a very extreme case.'" *In re Red Barn Motors, Inc*., 794 F.3d 481, 484 (5th Cir. 2015) (quoting *In re Southwestern Mobile Homes, Inc.*, 317 F.2d 65, 66 (Ct. App. Tex. 1963) (citation modified)). Petitioners come nowhere close to meeting this standard.

A.     **Petitioners Fail to Show a "Clear and Indisputable" Right to Issuance of the Writ**

The "first mandamus-test prong"—demonstration of a clear and indisputable right to the writ—"is about the legal merits of a petitioner's claim." *In re Parish*, 81 F.4th at 409. "[B]ecause the standard is a clear abuse of discretion, the merits of the claim must also be clear: 'the writ will not issue to correct a duty that is to any degree debatable.'" *Id*. (citation omitted). The petitioner must show more than that the District Court "misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re Lloyd's Register N. Am., Inc*., 780 F.3d 283, 290 (5th Cir. 2015).

Framed differently, a "district court's ruling is not *indisputably* erroneous if a reasonable argument can be made to support it." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 355 (5th Cir. 2017) (Costa, J., concurring in the judgment) (emphasis in original). And "in the context of a motion to transfer," this Court reviews "only for clear abuses of discretion that produce patently erroneous results." *In re Planned Parenthood*, 52 F.4th at 629. Mere legal error that is

"'reversible on a normal appeal'" is insufficient. *Id.*; *see also In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("In recognition of the extraordinary nature of the writ, we require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion."). That is particularly true here, where Petitioners seek an order risking inter-circuit conflict. *In re Red Barn*, 794 F.3d at 484.

        1.     *Petitioners Fail to Show the District Court Erred at All, Much Less Committed a Clear Abuse of Discretion that Produced a Patently Erroneous Result*

Petitioners fail to show any error at all—much less a clear abuse of discretion—in the District Court's transfer order, where the Relevant Terms contain a mandatory, enforceable forum selection clause that apply to Petitioners' claims against X Corp. and requires transfer to the Northern District of California.

To determine whether a forum selection clause applies, courts look to "the language of the parties' contracts." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). If the claim falls within its scope, "a valid forum-selection clause should be given *controlling weight* in all but the *most exceptional cases*." *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citation modified; emphasis added).

a. The District Court Did Not Clearly Abuse Its Discretion in Determining the Relevant Terms' Forum Selection Clause Was Mandatory

As the District Court explained, "[t]he interpretation of FSCs—*i.e.*, the determination of whether they are mandatory—is a matter of state law." App'x 597 (citing *Davis v. Meta Platforms, Inc.,* No. 4:23-cv-01001, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016)). Applying Texas choice-of-law rules, the District Court correctly found that California law applied to the forum selection clause because the Relevant Terms provide that "[t]he laws of the State of California . . . will govern these Terms . . . ." App'x 544, 568–569 (citing *Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *4 (E.D. Tex. May 14, 2021)).

The District Court also correctly found that, under California law, an FSC is mandatory if it "contains express language of exclusivity of jurisdiction" and "specif[ies] a mandatory location for litigation." App'x 569 (citing *Olinick v. BMG Entm't*, 42 Cal. Rptr. 3d 268, 274 (Cal. Ct. App. 2006)); *see also Korman v. Princess Cruise Lines, Ltd.*, 32 Cal. Rptr. 3d 668, 676 (Cal. Ct. App. 2019) ("'To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.'") (quoting *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995)); *Weber*, 811 F.3d at 768 (a

clause is mandatory "if it contains clear language specifying that litigation must occur in the specified forum").

The District Court also correctly determined the Relevant Terms' forum selection clause "affirmatively requires that all disputes be resolved in California and is mandatory under California law" App'x 570, 606, where it provides that "[a]ll disputes related to these Terms or the Services will be brought ***solely*** in the federal or state courts located in San Francisco County, California." App'x 544; *see also JPay LLC v. Houston*, No. 3:23-CV-1875-S, 2024 WL 3687099, at *5 (N.D. Tex. Aug. 5, 2024) (forum selection clause requiring "that litigation must occur 'solely and exclusively' in the Southern District of Florida or Florida state court" was mandatory); *Bilodeau v. Ahern Rentals, Inc.*, 2021 WL 8016841, at *2 (S.D. Tex. Aug. 20, 2021) (forum selection clause requiring disputes "be heard and resolved solely and exclusively by a Court in the State of Nevada" was mandatory); *see also Don't Tread On Us, LLC v. Twitter, Inc.*, No. 1:23-CV-20943-KMM, 2023 WL 7277183, at *3 (S.D. Fla. May 19, 2023) ("The Court agrees with [Twitter] that the forum-selection clause is mandatory and enforceable.") (citing *Trump v. Twitter, Inc.*, No. 21-CIV-22441, 2021 WL 8202673, at *6 (S.D. Fla. Oct. 26, 2021) (enforcing Twitter's forum selection clause).

In sum, the District Court did not clearly abuse its discretion in finding that

the Relevant Terms' forum selection clause is mandatory. *See Weber*, 811 F.3d at

768.

> b.  The District Court Did Not Clearly Abuse Its Discretion
> in Determining the Relevant Terms' Forum Selection
> Clause Applies to Petitioners' Claims Against X Corp.

"Under California law, a 'broad' clause contains language such as 'any

claim arising from or related to this agreement' or 'arising in connection with the

agreement.'" *Moates*, 2021 WL 3013371, at *8 (quoting *Howard v. Goldbloom*,

241 Cal. Rptr. 3d 743, 746 (Cal. Ct. App. 2018); *see also Davis*, 2023 WL

4670491, at *11 ("To fall within the scope of a 'broad' clause, the dispute between

the parties 'need only touch matters covered by the contract containing the' forum-

selection clause.") (quoting *Ramos v. Super. Ct.*, 239 Cal. Rptr. 679, 689 (Cal. Ct.

App. 2018)).

Here, the Relevant Terms' forum selection clause encompasses "[a]ll

disputes related to these Terms or the Services."[3] App'x 289. The District Court

correctly found that "[b]ecause Plaintiffs' claims arise from their use of . . . Twitter

accounts and . . . X Corp.'s alleged interference with that use, this case falls within

the scope of the TOS." App'x 572; *see, e.g.*, App'x 016–018, 020; s*ee also Davis*,

2023 WL 4670491, at *11 (under California law, forum selection clause requiring

---

[3] The Relevant Terms define "Services" to include X Corp.'s "various websites" and "applications," which include the Twitter platform. App'x 537–538.

any dispute "that arises out of or relates to these Terms or your access or use of the Meta Products" encompassed Texas statutory claims because they "relate directly to Meta's terms of service and to Davis's ability to use Meta's products without restriction"); *Moates*, 2021 WL 3013371, at *8–9 (under California law, forum selection clause requiring any dispute "arising out of or relating to . . . the Terms of Service or Facebook" encompassed federal claims, Texas statutory claims, and tort claims because the "claims all concern [plaintiff's] Facebook accounts" (brackets omitted)).

Petitioners' arguments all fail to show the District Court clearly abused its discretion in determining their claims fall within the scope of the Relevant Terms' forum selection clause.

*First*, Plaintiffs argue their claims fall outside the scope of the Relevant Terms' forum selection clause because they have not alleged a breach of contract claim. Pet. at 16–17. But the Relevant Terms' forum selection clause is not limited to claims for breach of the Relevant Terms; rather, it broadly applies to "[a]ll disputes related to these Terms or the Services." *See* App'x 537–538, 545. That Plaintiffs have not asserted a breach of contract claim does not render their claims outside the scope of the Relevant Terms' forum selection clause. *See, e.g.*, *Olinick*, 42 Cal. Rptr. 3d at 278 ("For the reasons stated above, we hold a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement'

between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.") (quoting *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 468–70 (1992) (internal quotation marks and italics omitted).

*Second*, Petitioners argue "this is not a mundane publishing/speaking contract-type dispute, this is a complex Censorship Industrial Complex dispute." Pet. at 17. This argument is belied by their allegations in the First Amended Complaint, which confirm their claims against X Corp. are based on Plaintiffs' use of Twitter and X Corp.'s alleged moderation of Plaintiffs' content as "contemplated" by the Relevant Terms.[4] *See, e.g.*, App'x 004–005 ("Twitter[] . . . censor[ed] . . . information of their own users (*e.g.*, Plaintiffs)"); App'x 016–017 (Plaintiffs' alleged injuries caused by "platform censorship"); App'x 068–069 (alleging "social media censorship"); App'x 082-083 (alleging "censorship" and seeking Plaintiffs' Twitter "account(s) access" to be "reinstated"); App'x 084 (alleging harms caused by "censorship on Social Media platforms"). In other

---

[4] Plaintiffs' allegations of restrictions on their Twitter use, whether by account suspension or content restrictions, are simply allegations of content moderation. *See Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 322 (E.D.N.Y. 2018), *aff'd in part, dismissed in part*, 934 F.3d 53 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) (social media platform's "provision of accounts" cannot "meaningfully be separated" from moderation of "content produced by users").

words, Petitioners' allegations of X Corp.'s coordination to "overtly and covertly erase [Petitioners] from the digital public square" and "silenc[e] disfavored . . . speech" (Pet. at 4–5) confirm that the gravamen of their claims is that X Corp. allegedly unjustly moderating their use of, and content posted on, Twitter. *See also* App'x 049–050.

In sum, the District Court correctly rejected Petitioners' argument and held that "because all of Plaintiffs' claims concern their use of Defendants' platforms, the parties' dispute is sufficiently related to the TOS." App'x 571; *see*, *e.g.*, *Trump v. Twitter, Inc*., 2021 WL 8202673, at *2, 6, 8 (rejecting similar arguments).

> c. <u>The District Court Did Not Clearly Abuse Its Discretion in Determining the Relevant Terms' Forum Selection Clause Is Valid and Enforceable</u>

Having determined that the Relevant Terms' forum selection clause is mandatory and applies to Petitioners' claims against X Corp., the District Court went on to correctly determine the clause was enforceable. *See Weber*, 811 F.3d at 770 ("Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play.").

As the District Court explained, "federal courts sitting in diversity apply federal law to the question of FSC enforceability." App'x 572 (citing *PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020) (citing *Weber*, 811 F.3d at 766)). "[A] strong presumption in favor of the enforcement of

19

mandatory" forum selection clauses exists. *Weber*, 811 F.3d at 773. To overcome

the presumption, the plaintiff must make a "clear showing that the clause is

'unreasonable' under the circumstances." *Id.*

> Unreasonableness potentially exists where: (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248

(5th Cir. 2023). "The party resisting enforcement on these grounds bears a 'heavy

burden of proof.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

17 (1972)).

The District Court did not clearly abuse its discretion in determining

Petitioners failed to meet this "heavy burden of proof" to resist enforcement of the

Terms' forum selection clause, for several reasons. App'x 572–575. *First*,

Petitioners did not show the inclusion of the forum selection clause in the Relevant

Terms was the product of fraud or overreaching because "'[f]raud and

overreaching must be specific to a forum selection clause in order to invalidate it.'"

App'x 573 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997); *see*

*Noble House*, 67 F.3d at 248 (requiring inquiry into whether *the incorporation of*

*the FSC* into the agreement was the product of fraud or overreaching) (emphasis

added)). "[A]llegations of such conduct as to the contract as a whole—or portions of it other than the [forum selection] clause—are insufficient; the claims of fraud or overreaching must be aimed straight at the [forum selection] clause in order to succeed." *Haynsworth*, 121 F.3d at 963. As the District Court correctly determined, Petitioners did not argue that the Relevant Terms' forum selection clause *itself* resulted from fraud or overreach, and therefore the clause is "not unenforceable on these grounds." App'x 573.

*Second*, the District Court correctly determined that enforcement of the Relevant Terms' forum selection clause would not "deprive[]" Petitioners of their "day in court." App'x 574 (quoting *Noble House*, 67 F.3d at 248). To make such a showing, "the resisting party must show it is impossible for the party to try the case, and litigating in another forum will require the party to abandon his claims." *Moates v. Facebook Inc.*, 2021 WL 3013371, at *5 (E.D. Tex. May 14, 2021); *see also Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *11 (E.D. Tex. July 20, 2023) ("To carry his heavy burden of making such a showing, [plaintiff] must demonstrate that, for all practical purposes, the courthouse doors will close to him upon transfer. A showing of comparatively less convenience or of a personal preference for the original forum cannot carry [plaintiff's] heavy burden." (citation omitted)). The District Court properly found that Petitioners failed to make any such showing. App'x 574.

*Third*, the District Court correctly noted "[Petitioners] offer no argument that the 'fundamental unfairness of the chosen law will deprive [them] of a remedy.'" App'x 573 n.8 (citation omitted). Nor could any of Petitioners' "fairness" arguments made for the first time in its Petition carry the day now. All such arguments are grounded in Petitioners' counsel's subjective opinion of "Big Tech bias" in the Northern District of California (Pet. at 2), which the District Court correctly considered and dismissed as "unsubstantiated accusations" based on nothing more than Petitioners' counsel's experience in one other case in the Northern District of California (*see* App'x 574). Counsel's groundless accusations are insufficient to show enforcement of the forum selection clause would be unreasonable here. *See Noble House,* 67 F.4th at 251 ("A chosen forum is not fundamentally unfair merely because its law is less generous than, or because the result might differ from that under, the forum state's law"); *see also Davis*, 2023 WL 4670491, at *12 (plaintiff's argument that California's "left-leaning jury pool and judiciary" merited invalidation of mandatory forum selection clause was "unpersuasive and demeaning to the notions of independence and faithfulness to the law that have underpinned the federal judiciary since this nation's founding"). Furthermore, as the District Court correctly concluded: "as to [Petitioners'] argument that transfer would foreclose any of [Petitioners'] claims arising under

Texas law, whether Texas statutory claims may be asserted in this case is unrelated to the forum analysis." App'x 574.

*Fourth*, the District Court correctly determined that enforcing the Relevant Terms' forum selection clause would not contravene Texas public policy, particularly where "Texas public policy strongly favors freedom of contract, including the freedom to agree to an FSC." App'x 574–575 (citing *Philadelphia Indem. Ins. Co. v. White,* 490 S.W.3d 468, 471 (Tex. 2016)). Indeed, "Texas's strong public policy favoring freedom of contract compels courts to respect and enforce the terms of a contract that the parties have freely and voluntarily entered," and "[t]his strong public policy extends to the enforcement of forum-selection clauses." *Davis*, 2023 WL 4670491, at *12 (internal quotation marks and citation omitted); *see also In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) ("Contractual forum-selection clauses are generally enforceable in Texas."). Petitioners argue, without citation, that "[t]he stakes could not be higher – the legitimacy of the First Amendment, the integrity of the federal judiciary, [and] the upholding (rather than the circumvention of) Texas Law." Pet. at 9. But Texas courts "do not have a monopoly on adjudicating Texas constitutional, statutory, and common law claims. . . . It is unpersuasive to argue a federal judge sitting in California applying Texas law violates Texas public policy." *Moates*, 2021 WL 3013371, at *6. Further, as the Magistrate Judge correctly determined, "whether

Texas statutory claims may be asserted in this case is unrelated to the forum analysis." App'x 574.

In sum, the District Court properly considered and rejected Petitioners' contention that enforcement of the Relevant Terms' forum selection clause would be unreasonable here. And because the District Court also correctly determined the Relevant Terms' forum selection clause was mandatory and applied to Plaintiffs' claims, the District Court correctly transferred Petitioners' claims against X Corp. to the Northern District of California. Having done so, Petitioners fail to show the District Court erred at all, much less committed a clear abuse of discretion resulting in a patently erroneous result that would merit issuance of the writ. *See In re Chamber of Commerce of the U.S.A.,* 105 F.4th 297, 311 (5th Cir. 2024).

> 2. *Petitioners' Other Arguments Fail to Demonstrate the District Court Clearly Abused Its Discretion*

Petitioners object to the District Judge's transfer order adopting the R&R, arguing the "thoughtless" order did not conduct a "legitimate de novo review" of the Magistrate Judge's findings and reasoning as required under Rule 72. Pet. 15–17. Petitioners' argument is belied by the transfer order itself, which expressly states "the Court reviews the report and recommendation *de novo*." App'x 606. Rule 72 and this Court require nothing more. *See Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 382 (5th Cir. 2004) (permitting district courts to "issue an abbreviated order adopting the magistrate's . . . recommendation").

Complaining that the transfer order "summarily adopted" the R&R, Petitioners concoct additional standards for district court orders adopting reports and recommendations that are not found in Rule 72, nor any other authority: that the transfer order should "address . . . specific objections" and "provide . . . independent reasoning or justification for transfer other beyond [sic.] the R&R." Pet. at 16. To the contrary, independent findings "are not necessary to demonstrate that de novo review took place." *Warren v. Miles*, 230 F.3d 688, 695 (5th Cir. 2000); *see also Habets*, 383 F.3d at 381 (determining the district court completed the "requisite de novo review" by entering a two-sentence order adopting the magistrate judge's recommendation one day after receiving the objections, which included a 200-page appendix). Indeed, "[w]hile this Court has remanded cases in which the district court's order adopting a magistrate judge's findings indicates that the district court applied the wrong standard of review or failed to review pertinent portions of the record, the Court will assume that the district court did its statutorily commanded duty in the absence of evidence to the contrary." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (cleaned up). Finally, as noted, mandamus is appropriate only to correct "patently erroneous *results*." *In re Volkswagen of Am.*, 545 F.3d 304, 312 (5th Cir. 2008) (emphasis added). As explained above, the District Court's result—transfer to the Northern District of California—was correct. Therefore, even if Petitioners had shown the District

Court failed to conduct the required de novo review (they did not), mandamus still may not issue to correct that alleged failure. *See supra* at § I.A.1.

In attacking the transfer order, Petitioners also measure it against an order issued by a different district court in another jurisdiction, in a separate case involving the Platform Defendants (and other parties) captioned *Cancer Step Outside the Box, LLC v. Dep't of State*, No. 3:24-CV-01465 (M.D. Tenn.) ("*CSOB*"). Petitioners argue that the district court's order in *CSOB* was what the transfer order in this case "*should* look like." Pet. at 16 (emphasis original). This comparison is inapt. In *CSOB*, unlike here, the district judge did not refer the motion to a magistrate judge for a report and recommendation. Here, by contrast, the transfer order adopted the Magistrate Judge's thorough and well-reasoned 19-page report. App'x 561, 606. Petitioners cannot (and, notably, do not) claim that they are unaware of the reasons for the ruling, which are set out in the R&R. Their dissatisfaction with its outcome is not a legally cognizable flaw.

Petitioners also complain the District Court did not stay its transfer order so that they could file this Petition before the case was docketed in the Northern District of California. Pet. at 15. But in their objections to the R&R, they did not seek a stay of the transfer order so that they could seek mandamus review. *See* App'x 581. That the District Court did not grant Petitioners "relief [they] never requested" is not an abuse of discretion. *See United States v. Moon*, 129 F.3d 609,

1997 WL 681098, at *3 (5th Cir. 1997). Furthermore, although in *In re Chamber of Commerce*, the case on which Petitioners rely for this point, this Court noted "a district court should stay a transfer order for a short period so that opposing parties may appeal it," 105 F.4th at 302 n.17, the Western District of Texas does not contain a rule requiring such a stay, and *In re Chamber of Commerce* does not require a District Court to do so.

Finally, Petitioners baselessly contend mandamus relief is warranted because X Corp. supposedly engaged in "forum manipulation" because it moved to transfer to the Northern District of California here but, in the *CSOB* case, it sought transfer to the Northern District of Texas. Pet. 23–25. The reason for this supposed discrepancy is simple: on May 27, 2024, when Petitioners sued, the Relevant Terms' forum selection clause designated California courts as the exclusive venue for disputes relating to, among other things, the use of Twitter. App'x 535. On November 15, 2024, X Corp. amended the X Terms of Service's forum selection clause to designate "the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States " as the exclusive venue for such disputes. *CSOB* was filed on December 16, 2024, *after* that amendment had occurred.[5] Thus, X Corp.'s motion seeking transfer of the *CSOB*

---

[5] The current X Terms of Service, effective as of November 15, 2024, are available at https://x.com/en/tos. X Corp. respectfully requests that the Court take judicial

*[Footnote Text Cont'd on Next Page]*

Plaintiff's claims against it to the Northern District of Texas was entirely consistent with the amended version of the X Terms of Service. Petitioners' assertion "this case was filed after that same relocation and after those same updated TOS were in effect" (Pet. at 33) is simply wrong—again, Petitioners filed their lawsuit *before* the X Terms of Service were amended. Petitioners' unfounded accusations of "forum manipulation" should be disregarded.

### B.     Petitioners Have an Alternative and Adequate Means of Relief

Before issuing any writ, this Court must be satisfied that the petitioner has "no other adequate means to attain the relief he desires." *In re Volkswagen*, 545 F.3d at 311. This requirement is "designed to ensure that the writ will not be used as a substitute for the regular appeals process," *id.* at 311, and has been likened to "an irreparable-injury analysis." *In re Parish*, 81 F.4th at 416.

Here, Petitioners have an alternative and adequate means of relief: seeking their desired relief in the Ninth Circuit, which has jurisdiction over this case. There, they could challenge the transfer by bringing a motion to retransfer in the Northern District of California, and if unsatisfied with that outcome, they may seek review in the Ninth Circuit by appeal or possibly even by writ. *Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005) (party unable to challenge transfer order

---

notice of this website as "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

in originating circuit was "not without recourse" because it could bring motion to retransfer in transferee court within the Ninth Circuit).

In short, Petitioners have "adequate means to attain the relief" they desire. Having failed to meet that required element, their Petition should be denied.

## C.     Mandamus Relief Would Be Inappropriate in Any Event

Finally, this Court should not grant mandamus because Petitioners cannot show that "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. "The writ is always discretionary: 'Discretion is involved in defining both the circumstances that justify exercise of writ power and also the reasons that may justify denial of a writ even though the circumstances might justify a grant.'" *In re Paxton*, 60 F.4th 252, 259 (5th Cir. 2023). Mandamus can thus issue where the "issues presented and decided above have an importance beyond this case." *In re Volkswagen*, 545 F.3d at 319.

Here, issuance of a writ would be inappropriate. As explained above, the petition falls far short of the required showing that the District Court committed a clear abuse of discretion producing a patently erroneous result. *See supra* § I.A. And while Petitioners claim that their case carries "wide-reaching implications," (Pet. at 31), their *Petition* addresses only a mundane matter of procedure, *i.e.*, proper venue for their case. Lastly, as described above, Petitioners have not been diligent in seeking this relief. *Supra* § I.B.

Thus, having failed to meet this required element for obtaining mandamus, the Petition should be denied.

## II. THIS IS NOT AN "EXTREME CASE" MERITING A REQUEST FOR INTER-CIRCUIT RE-TRANSFER

Even if Petitioners had shown entitlement to a writ of mandamus (they did not), Petitioners come nowhere close to demonstrating this is an "extreme case" meriting an order requiring the Western District of Texas to request a return of the case from the Northern District of California. *See In re Red Barn*, 794 F.3d at 484.

The transfer of this case was completed in April 2025, when the case was docketed in the Northern District of California. *In re Space Expl. Techs. Corp.,* No. 24-40103, 2024 WL 982501, at *1 (5th Cir. Feb. 26, 2024) ("the case must be both sent and *docketed* for a transfer to be complete"). Petitioners' request for a "a writ of mandamus that directs transfer of this matter back to the W.D. Tex. Court" (Pet. at 33) should be denied because this Court lost jurisdiction when transfer to the Northern District of California was completed. *See In re Sw. Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963) (completed transfer deprived originating Texas court of jurisdiction).

Petitioners also request "a writ of mandamus directing the W.D. Tex. Court to request return of the case from the N.D. Cal. Court." Pet. at 2. As acknowledged by Petitioners, this remedy is reserved for "very extreme case[s]." Pet. at 32; *Sw. Mobile Homes,* 317 F.2d at 66; *In re Red Barn Motors, Inc.*, 794 F.3d at 484

30

(denying writ of mandamus seeking return of transferred case). The Petition fails to show this case is an "extreme case" meriting this extraordinarily rare remedy. And Petitioners cite no authority that would justify issuing a writ under such routine circumstances, where the District Court correctly enforced the Platform Defendants' relevant terms of services' forum selection clauses to transfer this action. *Cf. Def. Distributed v. Bruck*, 30 F.4th 414, 436 (5th Cir. 2022) (granting writ where transfer did not involve mandatory forum-selection clause and transfer improperly severed case so that action partially remained pending in Texas).

An "extreme" case may be found in limited situations where the suit was transferred "despite the petitioner's diligence" in seeking relief. *In re Red Barn Motors*, 794 F.3d at 485.. Petitioners have not demonstrated diligence, where the transfer order was issued on April 2, 2025 but Petitioners waited until July 17— almost three months—to file their Petition. The Petition accordingly should be denied for lack of diligence. *See In re Red Barn*, 794 F.3d 481 at 485 (denying petition because petitioners "wait[ed] more than three months before filing any petition for review," and therefore were "not diligent in seeking review of the transfer"); *compare with In re Space Expl. Techs., Corp.*, No. 24-40103, 2024 WL 982501, at *1 (5th Cir. Feb. 26, 2024) (petition for writ of mandamus filed day after issuance of transfer order); *Def. Distributed*, 30 F.4th at 425 (petition for writ of mandamus filed thirty-nine days after issuance of transfer order).

31

Petitioners argue their delay in filing their Petition was reasonable because the parties consented to a 90-day stay in the Northern District of California. App'x 614. But the purpose of the requested stay was, as described by Petitioners, "to allow the Fifth Circuit time to *determine* whether the Western District of Texas Court's transfer order represents a clear abuse of discretion." *Id.* (emphasis added). In other words, the ninety days were intended to provide time not only for Petitioners to *file* a mandamus petition, but also for this Court to *resolve* the petition. But Petitioners waited until July 16—the very last day of the stay—to file this Petition. That demonstrates a lack of diligence such that re-transfer of the case would be unjustified and inappropriate. *See In re Red Barn*, 794 F.3d at 485.

In sum, because the Petition does not rise to the level of an "extreme case," no basis exists for return of this case from the Northern District of California.[6]

[THE REMAINDER OF THIS PAGE

HAS INTENTIONALLY BEEN LEFT BLANK.]

---

[6] Petitioners also feign outrage on behalf of the "non-platform" defendants for having to defend an action in California. Pet. at 20–23. This is not Petitioners' argument to make—none of the other defendants objected to the transfer order, and all have now appeared in the Northern District of California. Petitioners also incorrectly state that the government "declined response" here but argued against severance of the case in *CSOB*. Pet. at 22. To the contrary, the Government filed a response to the motion to transfer expressly stating that it took no position as to whether transfer was appropriate, but urging against severing the case if transfer were to occur, *i.e.*, if the motion were granted, then all parties should be transferred. App'x 556.

## CONCLUSION

X Corp. respectfully requests this Court deny the Petition.

Respectfully submitted,

Dated: August 13, 2025

/s/ *Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
Telephone: (213) 955-9240
ktrujillo-jamison@willenken.com

Michael R. Abrams
STONE HILTON PLLC
600 Congress Ave., Suite 2350
Austin, TX 78701
Tel: (737) 465-3897

*Attorneys for Respondent X Corp.*

# CERTIFICATE OF COMPLIANCE

This document complies with Federal Rules of Appellate Procedure 21 and 32 because it contains 7,309 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Respondent X Corp.*

# CERTIFICATE OF SERVICE

On August 13, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Respondent X Corp.*